## UNITED STATES v. RUSSIAN.
### No. 5314.

Circuit Court of Appeals, Third Circuit.

Oct. 4, 1934.

Frank J. McDonnell, U. S. Atty., of Scranton, Pa., Herman F. Reich, Asst. U. S. Atty., of Sunbury, Pa., Will G. Beardslee, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to the Atty. Gen., and Young M. Smith, of Washington, D. C., Atty., Department of Justice.

R. L. Levy and George W. Ellis, both of Scranton, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.

█ John Russian, a private in the United States Army, applied for and in February 1918 received a policy of war risk insurance covering death and total permanent disability occurring during the life of the policy. In December 1918 he was honorably discharged on a surgeon's certificate of disability disclosing chronic pulmonary tuberculosis involving the upper lobes of both lungs. At that time he was rated by the Veterans' Bureau as being temporarily totally disabled. Upon his discharge the veteran ceased paying premiums on his insurance and, on January 1, 1919, his policy lapsed. In 1928 the veteran developed tuberculosis of the lower bowels and in 1929 committed suicide. In July 1931 his widow, as administratrix, brought this suit on the policy of war risk insurance with the essential allegation of total permanent disability of the veteran incurred before the expiration of the policy. At the trial the government moved for a directed verdict in its favor on the ground that the plaintiff had failed to present any substantial evidence of total permanent disability of the veteran within the meaning and during the life of the contract of insurance. The court, being without aid from the decision in Lumbra v. United States, 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492, later rendered, refused the motion. On submitting the case the plaintiff had a verdict. The government appealed, raising the question presented on its motion for a directed verdict. Conformably with the rule, it assumed as established all the facts that the evidence supporting the plaintiff's claims reasonably tends to prove and all inferences fairly deducible from them. Gunning v. Cooley, 281 U. S. 90, 94, 50 S. Ct. 231, 74 L. Ed. 720.

█ The law applicable to this case may be summarized as follows:

"The basic law and the decided cases establish the propositions that recovery may not be had on a contract of war risk insurance for temporary total disability, Mason v. United States (C. C. A.) 63 F.(2d) 791; or for permanent partial disability, United States v. Thomas (C. C. A.) 64 F.(2d) 245; or for total permanent disability occurring after the expiration of the policy, United States v. McGrory (C. C. A.) 63 F.(2d) 697; and that it is incumbent upon the plaintiff suing on such a policy to show by substantial evidence that when the insurance was in force he was totally disabled and that such total disability was reasonably certain to continue permanently. United States v. McGrory (C. C. A.) 63 F. (2d) 697." United States v. Caldwell (C. C. A.) 69 F.(2d) 200, 201.

In looking for evidence of the requisite quality, we turn first to the history of the veteran's health when the policy was in force and to the subsequent history only as it bears on his condition when the policy was alive.

█ The plaintiff produced several lay witnesses who testified that subsequent to the expiration of the policy the veteran was ailing. Aside from this testimony, which had little bearing on his condition before the policy lapsed, she produced three physicians who, though not having examined the veteran when he was in the service, testified from examinations made in 1927 and 1928 and from the history of the case as revealed to them from other sources that in their opinion the veteran was a progressive tubercular; that the tubercular condition of his lungs in 1918 spread to his bowels in 1928; and that the veteran, at all times since the development of the disease (or since his discharge) in 1918, was totally and permanently disabled, within the definition of total disability which the government announced in administering the law of war risk insurance, War Risk Insurance Act 1917, § 13 (40 Stat. 399), as amended by Act May 20, 1918, § 1, 40 Stat. 555, Treasury Decision No. 20, and which covers an impairment of the body that "renders it impossible for the disabled person to follow continuously any substantially gainful occupation."

Although this was merely opinion evidence, it was none the less admissible in proof of the veteran's physical condition and ability to work at the critical period. If this were all there was in the case it would be enough to warrant its submission and to sustain a verdict. United States v. Lumbra (C. C. A.) 63 F.(2d) 796, 798. But against opinion evidence of this kind there may, in some cases, be evidence of the veteran's habits of life and capacity to work which may raise an issue of fact submissible to the jury or, as the government insists in this case, the veteran's habits and his work, practiced and performed after his discharge, may be such as conclusively to negative total permanent disability at the earlier period. Lumbra v. United States, 290 U. S. 551, 560, 54 S. Ct. 272, 78 L. Ed. 492. The facts bearing on this phase of the case, shortly stated, are these:

█ The Veterans' Bureau through the ten years from the veteran's discharge to his death

gave him ratings of total temporary, partial temporary, partial permanent disabilities in different percentages. At no time did the Bureau give him a rating of total permanent disability. And with these ratings the veteran and his wife evidently agreed, for the veteran did not bring suit on the policy during the ten years which were available to him, and his wife delayed her action for two years after his death; delays, in the absence of explanation, constituting strong evidence that the veteran was not totally and permanently disabled before the policy expired. Lumbra v. United States, supra. Indeed, his wife testified that when she married him in 1923 she believed him in good health, and he himself, in applying in 1924 for a reinstatement of his policy for $1,000, stated under oath that he was in good health, was not suffering any disability which was the result of anything that had happened to him when in the service, specifically, that he was not "permanently and totally disabled"; and that he had not consulted a physician in regard to his health since March 1919. The ratings contained the notation: "Tubercular, pulmonary, chronic, arrested—apparently cured." The Examiner found the veteran's pulmonary tuberculosis to be "apparently arrested," and that no other parts of his body were involved. The policy was re-instated for the amount requested and later the insurance money was paid.

Turning to the veteran's post-war industrial history it appears, without contradiction, that after being discharged, late in 1919, from the sanitarium, whence he had gone for tuberculosis treatment on leaving the Army, the veteran worked for the city of Scranton, Pennsylvania, as a mechanic from January 1, 1920 to June 1, 1920, with (according to the plaintiff's testimony) some interruptions. In September 1920 he entered vocational training, afforded by the government, in preparation for the continuance of his pre-war occupation as a machinist and remained in training without interruption until the completion of his course in September 1923. Although the character of work the veteran performed at the government's vocational training school is not given, it was, nevertheless, work. Therefore, contrary to the plaintiff's contention, this period of three years cannot be omitted from the veteran's work record after his discharge from the Army. He not only worked but during that time he drew compensation for partial disability from the government as he did in different amounts for the balance of his life. Since his death his widow has received monthly payments in the nature of a pension.

The veteran was married on October 27, 1923. During the next five months he worked (with possible interruptions) for the Jessup Coal Company and Rose Coal Company at manual labor. Beginning in April 1924 and continuing until February 1928 he was employed by the city of Scranton, operating a tractor and air-compressor and repairing machinery used in road construction and maintenance, satisfactorily performing the work of an able-bodied man, and receiving a corresponding wage of $150 a month. With the exception of part of February and March 1926, and all of February 1927 during which time he underwent an operation for appendicitis, this four year period of employment was uninterrupted. From our estimate of the veteran's employment after he left the sanitarium late in 1919, it appears that in the eight years in question he was, for one reason or another, out of work or unable to work for periods aggregating about a year. Assuming his disability to have been permanent when the policy was in force, manifestly it could not, on the facts, have been "total," however liberally the word may be construed. Lumbra v. United States, supra.

We find the evidence of the veteran's industrial activities conclusively negatives the claimed total permanent disability at the earlier time within the rule of the Lumbra Case and cases there cited, and that the verdict of the jury is in truth a finding that the veteran could not do what he in fact did and therefore is in conflict with the evidence and otherwise is not supported by substantial evidence that when the insurance was in force the veteran was totally disabled and that such total disability continued permanently.

The District Court fell into error in refusing the government's motion for a directed verdict. Accordingly the judgment is reversed and a venire de novo awarded.