## UNITED STATES v. CALVEY.

### No. 7180.

Circuit Court of Appeals, Third Circuit.

March 8, 1940.

See, also, 27 F.Supp. 359.

Frederick V. Follmer, U. S. Atty., and Arthur A. Maguire, Asst. U. S. Atty., both of Scranton, Pa., Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and Fendall Marbury, Sp. Atty., Department of Justice, of Washington, D. C., for appellant.

Joseph T. Kelly and Stanley F. Coar, both of Scranton, Pa., for appellee.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

BIGGS, Circuit Judge.

The appellee brought suit against the United States to recover total permanent disability benefits upon a policy of United States Government life insurance issued in the sum of $5,000. The appellee's injuries resulted from his having fallen into a tractor-drawn mowing machine while in the United States Army. The appellee's claim was denied by the Veterans Administration. The case was tried to a jury and the sole issue presented was whether the appellee became totally permanently disabled as a result of the accident. The jury found for the appellee and judgment was entered in his favor. The appeal at bar followed.

Briefly, the facts are as follows: The appellee was forty-one years old at the time of the trial. The accident occurred approximately eight years earlier. There was opportunity therefore to ascertain the extent and permanency of the appellee's injuries with some certainty. A physician, Dr. McDonnell, who had examined the appellee for the first time more than four years after the accident stated what he himself had observed as to the appellee's condition and what the appellee had told him about some of his symptoms. This physician, who was the only medical witness, examined the appellee a second time just prior to the trial.

It appeared that both of the appellee's legs were much reduced in tissue, though the appellee's left leg had suffered the greater tissue loss, which included muscles, tendons, nerves and blood vessels. The large muscle of the left leg was completely gouged out and an area of scar tissue which had grown upon the posterior of this leg had adhered to the tendon of Achilles, causing the appellee's foot to turn inward and making walking difficult. The doctor testified in respect to the extent and permanency of appellee's injuries in part, as follows. "There must have been great loss of tissue in both legs, more especially in the left, as it took a year for the flesh to fill in and cover over; I make no argument about the permanency; his present disability is after four years; very likely there will be no further rejuvenation of the nerves and muscles nor the recovery of motion. In addition to that, he has a pain from the cut and exposed nerves and the cramping of the muscles of both legs. All this seems sufficient to cause his present complaints, and to disable him from doing any kind of work."

It also appears that since his discharge from the Army because he could not perform the duties of a soldier, the appellee has lived with his sister in Scranton, Pennsylvania, and that his brother operated an automobile sales business in that city. The appellee very frequently went to his brother's garage and from time to time was sent by his brother to Buffalo to bring back new cars. Upon these occasions, the appellee was in charge of the men sent to Buffalo to drive the cars to Scranton and upon several occasions, though with very frequent stops for rest, the appellee himself drove a car from Buffalo to Scranton, a distance of about two hundred forty miles. The record shows that during the years 1933, 1934, 1935 and 1936 the appellee made a total of approximately eighty-seven trips from Buffalo to Scranton. He never received any compensation for this work, which averaged approximately twenty-two days in each year, but he did receive occasional gratuities from his sister and brother. The appellee's brother testified that he sent the appellee to Buffalo "to have his mind occupied and to give him something to do."

The Government's contention that the appellee was not totally and permanently disabled is based entirely upon the evi-

dence relating to these trips. It contends that no individual who had suffered total and permanent disablement could perform the services which the appellee performed in the years referred to. The test, however, is not whether the injured individual may perform any services for any one but, as this court stated in United States v. Russian, 3 Cir., 73 F.2d 363, 364, whether the insured has suffered bodily impairment which makes it impossible for him to follow any substantially gainful occupation and whether this condition is reasonably likely to continue. All evidence respecting the appellee's physical condition, the nature of the work done by him prior to his injury, his training and background, the conditions under which he has worked since his injury and whether he actually worked or merely held a sinecure through pity for his disablement, must be given consideration. United States v. Vineyard, 5 Cir., 71 F.2d 624, 626, 627. The questions of the extent and permanency of the appellee's injuries in the case at bar properly were left to the jury by the trial court. The evidence therefore must be viewed in the light most favorable to the appellee and he must be given the benefit of such reasonable inferences in his favor as the jury might have drawn from the evidence. Lumbra v. United States, 290 U.S. 551, 553, 54 S.Ct. 272, 78 L.Ed. 492. We are of the opinion that the jury was entitled to conclude that the appellee was totally permanently disabled.

The United States also contends that the court below committed reversible error in permitting Dr. McDonnell to repeat to the jury statements made to him by the appellee upon the two occasions when he was examined by the physician. The Government takes the position that the appellee's declarations to Dr. McDonnell do not come within that exception to the hearsay rule which permits a physician to testify to the declarations of a patient as to his physical condition made while seeking medical aid. The appellee, says the Government, really was seeking to prepare for a trial upon the issue of his disability, the Veterans Administration having already rejected his application. Dr. McDonnell testified that the appellee came to him for a combination of two reasons; to seek medical advice and to prepare for trial.

■■ There is no doubt that evidence as to what a patient has told a doctor for the purposes of medical treatment is admissible as an exception to the hearsay rule. United States v. Tyrakowski, 7 Cir., 50 F.2d 766, 771; United States v. Nickle, 8 Cir., 60 F.2d 372, 374; Runkle v. United States, 10 Cir., 42 F.2d 804. It has also been held that if a physician has examined a claimant solely for the purpose of testifying at a trial he may not be permitted to state to the jury the case history given to him by the claimant. Under such circumstances it is thought the patient's interest in the accuracy of the physician's judgment is insufficient to preclude the possibility of falsehood. United States v. Nickle, supra, 60 F.2d 374; Third National Bank & Trust Company v. United States, 6 Cir., 53 F.2d 599, 601. We think that in the case at bar we are not called upon to rule upon the question of whether Dr. McDonnell's repetition of the appellee's statements to him was admissible for we are of the opinion that the admission of such evidence does not constitute reversible error. Dr. McDonnell's testimony as to what the appellee told him concerning his injuries had little bearing upon the question of the appellee's permanent and total disability. Most of what the appellee told Dr. McDonnell related principally to his pain and suffering, items entitled to weight in a damage suit but not pertinent to the issue presented by the case at bar. The testimony of the physician as to what he found the appellee's condition to be upon examination was in reality the evidence which went to the gist of the controversy, viz., the extent and permanency of the appellee's injuries.

■ We are also of the opinion that Dr. McDonnell's statement that the appellee's condition was such as " * * * to disable him from doing any kind of work * * * " was admissible. The appellant, contending to the contrary, relies upon the statement of the Supreme Court in United States v. Spaulding, 293 U.S. 498, 506, 55 S.Ct. 273, 79 L.Ed. 617, that experts ought not to be asked or allowed to state their conclusions on the whole case. Dr. McDonnell did not state a conclusion as to the ultimate fact of permanent and total disability of the appellee. The decision in United States v. Spaulding, supra, therefore does not rule the case at bar. The difference between testimony as to ultimate facts and evidentiary facts in a case such as this is exemplified by the decision of this court in McConnell v. United States, 3 Cir., 81 F.2d 639, 640, the distinction lying in the difference in the evidence involved by the third and fifth assignments of error in the McConnell case.

■ The United States contends also that the trial court committed reversible error in charging the jury upon a definition of total disability to the effect that the appellee was not required to do work causing him pain and suffering. The portion of the charge objected to need not be quoted here. An examination of the charge as a whole, however, discloses the fact that the trial court charged upon the nature of total and permanent disability, that is to say, defined the meaning of that phrase at least ten other times, defining it correctly in all these instances. The last time the court defined the phrase was at the end of the charge where the trial judge stated, "The question is for you to determine, under the evidence, and that is the whole question, whether this plaintiff is totally and wholly disabled and permanently prevented from pursuing any substantially gainful occupation." This definition is quite correct and the effect of the earlier language to which the appellant objects is clearly de minimis.

■ One further point requires consideration. The Government contends that the record contains neither evidence nor finding that proof of the appellee's disability was submitted in accordance with the terms of the policy, which provides that "Upon due proof of the total permanent disability of the Insured * * * the monthly installments shall * * * be payable to the Insured and continue to be so payable during total permanent disability so long as he lives, * * *." The pertinent condition of the policy states that "The total permanent disability benefits may relate back to a date not exceeding six months prior to receipt of due proof of such total permanent disability, * * *". The judgment entered by the court upon the verdict finds that the policy "matured" on the 25th day of June, 1928, the actual day of the accident. It is a fact that the record contains no evidence that due proof was submitted to the appellant as to the appellee's disability. While we entertain no doubt that the complaint and answer which set forth that the appellee made demand upon the United States for the payment of total and permanent disability and that the

Veterans Bureau refused to pay such benefits are sufficient to permit the appellee to maintain his action for future benefits (See United States v. Meyer, 3 Cir., 76 F. 2d 354, 357, Manke v. United States, 9 Cir., 38 F.2d 624), none the less since total permanent disability benefits under the terms of the policy may relate back to a date not exceeding six months prior to the receipt of due proof, the judgment of the court below requires modification, for nothing contained either in the verdict of the jury or in the judgment of the court determines the date upon which due proof was offered by the appellee. The letter of June 6, 1932, written by the Veterans Administration to the appellee refusing compensation and now in evidence does not clarify this point.

■ We regard the issue of back benefits under the policy as clearly distinct and separable from the issue of future benefits as was stated by this court in United States v. Meyer, supra, 76 F.2d 357, following the decision of the Supreme Court in Gasoline Prods. Co. v. Champlin Co., 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188. The issue of back benefits is separable from the other issues in the case which have already been tried and disposed of. It may be properly the subject of partial new trial in accordance with Rule 59 (a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Accordingly the judgment of the District Court is affirmed insofar as it relates to total permanent disability benefits payable after the date of its entry. As to such benefits payable prior thereto the judgment is reversed and the cause is remanded to the District Court with directions to grant a new trial restricted to the issue as to whether and when the appellee gave the appellant due proof of his disability. Upon the determination of that issue the court shall enter judgment in favor of the appellee for such benefits as may then appear to be due him under the terms of the policy for the period prior to June 20, 1939, the date of entry of the judgment appealed from.