**UNITED STATES of America, Appellee,**

**v.**

**Patricia Antoinette SPICA, Appellant.**

**No. 19417.**

United States Court of Appeals Eighth Circuit.

Aug. 1, 1969.

Lawrence O. Willbrand, St. Louis, Mo., for appellant.

Dennis C. Donnelly, Asst. U. S. Atty., St. Louis, Mo., for appellee; Daniel Bartlett, Jr., U. S. Atty., on the brief.

Before MEHAFFY and GIBSON, Circuit Judges, and MILLER, Senior District Judge.

JOHN E. MILLER, Senior District Judge.

Patricia Antoinette Spica appeals from a conviction of causing to be transported in interstate commerce from St. Louis County, Missouri, to Nashville, Tennessee, a falsely made and forged check on or about March 28, 1968, in violation of 18 U.S.C. § 2314. She was sentenced to three years. We affirm the judgment of conviction.

In view of the defendant's contentions, it is necessary to set forth a brief factual resume of the evidence.

On March 22, 1968, a package of blank Ralston Purina checks, prefixed with the letter "P" and serially numbered 501–600, 601–700, 801–899, were stolen from the automobile of an employee of Ralston Purina in St. Louis. On March 30, 1968, a woman representing herself to be Janice Murphy purchased gasoline from Irie W. Melton, the owner of a service station in suburban St. Louis, presenting in payment the check numbered P 653 [1] which is the subject of the indictment. Melton described the automobile the woman drove as a navy blue 1967 Pontiac GTO with a black vinyl top. The left front and rear fenders had been damaged. Melton positively identified the defendant in court as the woman from whom he had received the check. When the check failed to clear, Melton attempted to locate Janice Murphy at the address written on the back of the check. The street number proved to be non-existent, but the automobile was located on the same street at the residence of a Mrs. Helen Temme, who told Melton that the driver of the car was not Janice Murphy. On direct examination, the defendant admitted being present at the Temme residence on the day Melton inquired as to the owner of the automobile.

A loan officer of the Lindell Trust Company in St. Louis testified that the defendant obtained a loan from that institution and executed a chattel mortgage on her automobile, using the name Patricia Mistakis (the defendant's maiden name). The loan officer repossessed the automobile on March 29, 1968, which he observed to be a 1967 Pontiac GTO, navy blue with a black vinyl top, bearing license number BE 5490. The left front and rear fenders were damaged. On the same date, the defendant paid the account and regained possession of the car.

An employee of the Missouri Department of Revenue, Motor Vehicle Registration, identified an application for license for a 1967 Pontiac GTO submitted in the name of Patricia Mistakis. The application showed the serial and license numbers to be identical to those on the automobile mortgaged to the Lindell Trust Company.

A drive-in teller at the Hampton Bank in St. Louis testified that a woman she identified in court as the defendant cashed Ralston Purina check number P-688 at her window on March 29, 1968. The named payee was Patricia Niedzialek. The woman drove a late model automobile with a dark vinyl top.

A drive-in teller at the Baden Bank in St. Louis testified that a woman she identified as the defendant cashed Ralston Purina check number P 626 at her window on March 25, 1968. The named payee was Alice M. Trimble. The teller

1. Defendant's attorney stipulated that the check was caused to be transported in interstate commerce through the bank collection process.

observed that the woman drove a dark blue GTO bearing license number BE 5490, which she recorded on the back of the check.

A drive-in teller at the Union National Bank of East St. Louis testified that a young white woman driving a late model automobile cashed Ralston Purina check number P 616 at his window on March 29, 1968, but he was unable to identify the defendant.

An official of the Union National Bank of East St. Louis subsequently forwarded check number P 616 to the Federal Bureau of Investigation, where a fingerprint examiner determined that a latent fingerprint discovered on the check matched a print of the defendant's left index finger taken by the St. Louis County Police Department. The defendant testified that she was arrested by the police departments of Bridgeton and Webster Groves, Missouri, and on each occasion touched checks which were handed to her by police officers. The defendant did not know whether check number P 616 was one of the checks handled by her. A vice-president of the bank and the FBI Agent who received number P 616 from the bank testified that the check passed directly from the bank to the Bureau and was not delivered to any local law enforcement agency.

In essence, the defendant contends that the court erred in (1) admitting into evidence alleged proof of similar offenses on the issue of intent as such proof was merely cumulative and was of uncertain character, and (2) in failing to grant a mistrial after unduly emphasizing the Government's evidence and by supporting the Government's case by argument and by putting its own experience on the scale against the defendant.

(1) The statute requires and this Circuit and others have long held that intent and guilty knowledge are essential elements which the Government must prove in order to establish a violation of 18 U.S.C. § 2314. Barnes v. United States, (8 Cir. 1952) 197 F.2d 271; Pines v. United States, (8 Cir. 1942) 123 F.2d 825; Hulsey v. United States, (5 Cir. 1966) 369 F.2d 284; United States v. Metcalf, (4 Cir. 1968) 388 F.2d 440; Pauldino v. United States, (10 Cir. 1967) 379 F.2d 170. The general rule is clear and unquestioned. A crime cannot be established by evidence of separate and distinct crimes not charged in the indictment. But where intent and guilty knowledge are essential elements of the offense charged, evidence of similar offenses closely connected with the offense charged and tending to show criminal intent or guilty knowledge is admissible. Love v. United States, (8 Cir. 1967) 386 F.2d 260, cert. den. 390 U.S. 985, 88 S. Ct. 1111, 19 L.Ed.2d 1286; Williams v. United States, (8 Cir. 1959) 272 F.2d 40; Kempe v. United States, (8 Cir. 1945) 151 F.2d 680; Brickey v. United States, (8 Cir. 1941) 123 F.2d 341.

All of the authorities relied upon by the defendant recognize an exception to the general rule when intent is an element of the offense charged. Niederluecke v. United States, (8 Cir. 1927) 21 F.2d 511; Malone v. United States, (7 Cir. 1938) 94 F.2d 281; Gianotos v. United States, (9 Cir. 1939) 104 F.2d 929; Simpkins v. United States, (4 Cir. 1935) 78 F.2d 594; Lynch v. United States, (4 Cir. 1926) 12 F.2d 193; Crinnian v. United States, (6 Cir. 1924) 1 F.2d 643; State v. Bersch, 276 Mo. 397, 207 S.W. 809; 8 R.C.L., p. 206, § 200.

This Circuit is, however, firmly committed to the rule that it is essential to the admissibility of another distinct offense that the proof be plain, clear, and conclusive, and evidence of a vague and uncertain character is not admissible. Kraft v. United States, (8 Cir. 1956) 238 F.2d 794; Paris v. United States, (8 Cir. 1919) 260 F. 529.

The evidence offered by the Government was clear and conclusive. The defendant was positively identified as the person who cashed checks P 688 and P 626. The drive-in teller at the Union National Bank of East St. Louis could not positively identify the defendant as

the person who cashed check number P 616, but it was clearly established that the defendant's fingerprint was on the check and the jury could reasonably infer that she represented herself to be the payee and obtained payment. In any event, the overall strength of the Government's case leads us to conclude that no prejudicial error resulted from admitting evidence in regard to check number P 616. *Osborne v. United States*, (8 Cir. 1965) 351 F.2d 111. Moreover, it is clear that the evidence of similar offenses admitted tended to establish intent and was not merely cumulative in nature. It was necessary for the jury to conclude that the defendant acted with specific intent and not through innocence or mistake. Evidence of identical offenses committed within a few days of the offense charged was highly relevant. In addition, the court gave appropriate jury instructions, limiting the use of the evidence. See Moses v. United States, (8 Cir. 1961) 297 F.2d 621, 623–624. Any prejudice to the defendant was clearly outweighed by the probative value of the evidence admitted.

(2) The trial court did not err in failing to grant a mistrial after the colloquy which arose between the court and defendant's counsel during counsel's redirect examination of the defendant in regard to check number P 616. The Government's attorney concluded his cross-examination by referring to the testimony which identified a fingerprint on check number P 616 as being that of the defendant. The following then transpired in the presence and hearing of the jury:

"Redirect Examination

"By Mr. Willbrand:

Q. In other words, you can't tell us exactly the——

The Court: Let's don't get into that. This is an *Illinois* check, isn't it?

Mr. Edgar: Yes, your Honor.

Mr. Willbrand: I beg your pardon, your Honor.

The Court: This one you're talking about is the check that was passed in Illinois, which they said they got from Springfield, which, of course, would be the Springfield, Illinois, people.

Mr. Willbrand: Yes, your Honor, but nevertheless that could be a check that the Bridgeton police had or Webster Groves police had.

The Court: Of course, that's purely your imagination. You have nothing to support such a statement.

Mr. Willbrand: No, but the government——

The Court: Normally, from across the river they don't bring their stuff over and hand them to the local police. I merely say that with respect to the other, the jury can disregard what I say, but normally the Bridgeton police wouldn't have East St. Louis——

Mr. Willbrand: I have done it, your Honor.

The Court: If you've seen it done, it may be. Jury may consider it for what it may be worth.

(Whereupon the following proceedings were had in the presence but out of the hearing of the jury.)

Mr. Willbrand: Your Honor, at this time I respectfully move for a mistrial on the grounds that this part of the government's case has been unduly emphasized, that is, the elements referred to by his Honor, and for that reason I would respectfully move for a mistrial.

The Court: Be overruled.

(Whereupon the following proceedings were had in the presence and hearing of the jury.)

The Court: The jury can understand that all I was trying to do was to help the explanation of it, and you're not to consider anything that I may have said. You alone can pass on the testimony with respect to it.

Be overruled."

In a trial to a jury in a federal court, the judge is clearly not a mere moderator. He must determine all ques-

tions of law that arise and insure the proper conduct of the trial. He may explain or comment upon the evidence whenever it appears necessary to assist the jury, and may express his opinion as to the facts provided he makes it clear to the jury that all matters of fact are submitted for its determination. Quercia v. United States, (1933) 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321; Rowell v. United States, (8 Cir. 1966) 368 F.2d 957. The court may even express an opinion as to the guilt of the defendant, provided the power is exercised cautiously and only in exceptional cases. United States v. Murdock, (1933) 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381.

While it is true that the trial court, the Hon. Roy W. Harper, a highly capable and thoroughly experienced Judge, did provide an analysis of a portion of the evidence in the light of his experience, he did not add to the evidence or mislead the jury. Nor did he assume the role of an advocate. Furthermore, we see no causal connection between the court's remarks and the fact that the Government thereafter called witnesses in surrebuttal whose testimony indicated that check number P 616 was never in the custody of local law enforcement agencies. The evidence regarding the fingerprint on check P 616, including the defendant's statement that she touched several checks handed to her by local police, was in the record prior to the discussion between the court and the defendant's counsel. The Government was clearly faced with the choice of calling surrebuttal witnesses to establish the chain of possession of the check, or leaving uncontradicted the inference that the defendant's fingerprint was on check P 616 as a result of the actions of the Bridgeton or Webster Groves police.

It is clear to us that the brief comments of the court were not of a sort likely to remain firmly lodged in the memory of the jury and to excite a prejudice which would preclude a fair and dispassionate consideration of the evidence. Moreover, any possible prejudice to the defendant was cured by the court's subsequent statements to the jury quoted above. Finally, the court instructed the jury as follows:

> "If, in the course of these instructions, and if during this trial, the court has said or shall say anthing that indicates to you how the court might feel or how you think the court feels with respect to the testimony in this case, and that opinion is different from your opinion of the testimony, you are to accept your opinion of the testimony rather than the court's, because it is your sole province to pass on the testimony, and from the testimony you pass on the credibility of the witnesses, and with that the court has nothing to do, just as you members of the jury have nothing to do with determining what the law is in this case."

The record has been carefully examined. The contentions of the defendant have been considered and found to be without merit.

Affirmed.