UNITED STATES of America,
Appellee,

v.

James Leroy COCHRAN, Appellant.

No. 72–1322.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1973.

Decided March 9, 1973.

Norman S. London, St. Louis, Mo., for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before GIBSON and ROSS, Circuit Judges, and BENSON,* District Judge.

GIBSON, Circuit Judge.

The defendant James Leroy Cochran was convicted of robbing the federally insured Cass Federal Savings and Loan Association, St. Louis, Missouri, in violation of 18 U.S.C. § 2113(a) and (d). The jury found him not guilty of three counts of abducting various persons[1] in violation of 18 U.S.C. § 2113(e) (Count II) and 18 U.S.C. § 1201 (kidnaping, Counts III and IV). Defendant was sentenced to 25 years imprisonment for the robbery conviction.

On appeal, the defendant raises four issues: (1) the admission of evidence of criminal conduct by the defendant that was not charged in the indictment, (2) the failure to declare a mistrial after a courtroom disturbance by defendant, (3) the admission of testimony on cross-examination concerning a medical report by a doctor not present at the trial as violating the hearsay rule, and (4) the exclusion of expert testimony on the nature and effect of prison life. We find none of the contentions merits reversal and affirm.

Since the defense was lack of mental responsibility, the Government's evidence was substantially uncontradicted. On October 21, 1971, the defendant and another individual, both carrying pistols, entered Cass Federal Savings and Loan Association and robbed the association of $10,245. Responding to a robbery report, St. Louis police officers pursued a 1971 car driven by the defendant. During the ensuing chase, shots were fired from the vehicle at the officers. The defendant lost control of the car, which stopped in a service station lot. He then

---

* Judge Benson, Chief Judge of the District Court for North Dakota, sitting by designation.

1. James Andrew Lucas (Count Two), John Dorrell III (Count Three), and Mr. and Mrs. Darian and Mr. and Mrs. Greenlee (Count Four).

exited, engaged in a ten minute gun battle with several officers, and fled to nearby Northwest High School, where he held a gun to the head of a high school administrator, Don LePlante, and threatened to kill him. When the defendant learned that LePlante did not have a car, he fled to the home of Mr. and Mrs. Lucas. There he told Mr. Lucas that he had shot a police officer.[2] After holding the Lucas couple and several children captive, the defendant forced Mr. Lucas to drive him to Illinois, which was the subject of Count II (abduction or kidnaping). The defendant sometime later turned up in Boonville, Missouri, and forced a lady to drive him to St. Louis, where he accosted John Dorrell III on October 23, 1971, and forced him to drive the defendant to Gallup, New Mexico, and back to St. Louis. The Dorrell abduction formed the basis of Count III. After abducting Dorrell, the defendant forced Mr. Darian to drive him, Mrs. Darian, and Mr. and Mrs. Greenlee to Columbus, Ohio, where the Darians and Greenlees were released. The abduction of these couples constituted Count IV. The defendant proceeded to drive Darian's car to Kentucky, where he abandoned the car at a rest stop and later surrendered to FBI agents.

First, the defendant contends that the admission of evidence of criminal conduct not charged in the indictment— shooting at police officers, holding a gun to LePlante's head and threatening him, abducting a lady in Boonville, and stating to Lucas that he shot a police officer —inflamed the jurors, created undue prejudice, disparaged the defendant's character, and denied him a fair opportunity to defend against the indicted charges.

 Well established rules have developed concerning the admission of evidence of other criminal conduct. Al-

though this evidence is generally inadmissible since it suggests that the defendant has a propensity to commit crime,[3] the trial court can in its discretion admit relevant evidence of other criminal acts and reversal is only commanded when "it is clear that the questioned evidence has no bearing upon any of the issues involved." Wakakson v. United States, 367 F.2d 639, 645 (8th Cir. 1966), cert. denied, 386 U.S. 994, 87 S.Ct. 1312, 18 L.Ed.2d 341 (1967). The trial court in determining admissibility weighs the prejudicial effect against the probative value of the evidence of the other criminal conduct. Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85, 90 (1964). In applying this weighing analysis, trial courts are aided by recognized exceptions to the admissibility of evidence of other crimes or criminal conduct. Such evidence is relevant to prove "(1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) identity of the person charged with the commission of the crime on trial." Drew v. United States, supra, 331 F.2d at 90 (footnote omitted), quoted in Love v. United States, supra, 386 F.2d at 266; United States v. Lewis, 423 F.2d 457, 459 (8th Cir. 1970); Proposed Rules of Evidence for United States Courts and Magistrates, Rule 404(b), 51 F.R.D. 315, 346.

 The questioned evidence in this case concerns "an uninterrupted course of action"[4] that is relevant to aid in proving motive, intent, absence of mistake, and a common plan or scheme to commit the alleged abduction crimes in avoiding apprehension on the bank robbery offense. The objected to evidence was a part and parcel of the criminal spree of bank robbery and the con-

2. A state murder charge was *nolle prossed* after this action was tried.

3. Love v. United States, 386 F.2d 260, 266 (8th Cir. 1967), cert. denied, 390 U.S. 985, 88 S.Ct. 1111, 19 L.Ed.2d 1286 (1968).

4. United States v. Stubblefield, 408 F.2d 309, 310 (6th Cir. 1969).

sequent acts of abduction, threats, and intimidation to avoid apprehension. The trial court did not abuse its discretion in admitting the evidence of other criminal conduct since that evidence had a bearing on the issues involved. In addition, there was no prejudice at all since defendant did not contest the indicted acts, but sought to excuse them on the .grounds of mental incompetency.

Second, the defendant argues that the District Court should have declared a mistrial due to a disruption at trial by the allegedly mentally disturbed defendant. When the District Attorney during cross-examination of a defense psychiatrist was attempting to prove that the defendant might have misinformed the psychiatrist, the defendant leaped to his feet and yelled that he had never lied.[5] FBI agents, United States marshals, and the courtroom deputy restrained the defendant at the court's direction, handcuffed him in presence of the jury, and removed him from the courtroom.

■ Restraining an unruly defendant and removing him from the courtroom are within the "constitutionally permissible ways for a trial judge" to handle a defiant defendant and to insure the dignity, order, and decorum of court proceedings. Illinios v. Allen, 397 U.S. 337, 343–344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). The defendant, however, argues that a different standard should apply to mentally ill defendants who disrupt court proceedings. The question of courtroom disturbances by mentally ill defendants presents, as Mr. Justice Douglas said, "a perplexing problem." Illinois v. Allen, supra at 352, 90 S.Ct. 1057 (Douglas, J., concurring). However, we decline to promulgate judicial standards for such disturbances when the record offers little basis for the defendant's claim of mental illness during the trial. In addition, the jury found the defendant responsible at the time of committing the robbery, and the court determined that the defendant was competent to stand trial.

Third, the defendant argues that references during cross-examination by Dr. Blackmun, a defense witness, to a diagnosis prepared by Dr. John Baker, an osteopath at Missouri State Penitentiary, who diagnosed the defendant as having no psychiatric problems, were inadmissible as hearsay evidence. The Government contends that this cross-examination of Dr. Blackmun was being conducted to determine the basis of the witness' opinion concerning the defendant's mental health. Upon objection to this line

---

5. The District Attorney did not accuse the defendant of lying. He sought to elicit from the doctor that he relied on information furnished by defendant and that misinformation could lead to an erroneous diagnosis. After a number of attempts along that line of questioning, the following colloquy occurred:

"Q. Now, sir, I will ask you specifically, and we'll get it right down so the layman can understand. I'm a layman, I'm not a psychiatrist. If a patient gives you misinformation, wouldn't that have some effect or possibly help mislead you in your diagnosis?

"A. Actually when we are trained as experts we expect—

"Q. Sir, will you please answer my question without giving us a lecture?

"The Court: Pardon me, let the doctor answer.

"A. We expect to weigh the answers. Even when they're misstatements they may fit into a picture of illness or not illness and we can evaluate what a person tells us and the kind of emotion with which those statements are made, whether they fit into an illness pattern or not. So expertise is to cut through some misstatements and discern the facts which become—

"The Court: Now, Mr. Martin, you may re-ask the question, sir.

"Q. Now, sir, I'll get to specifically Mr. Cochran's case.

"A. Yes, sir.

"The Defendant: That's what you're trying to do, you're trying to call me a liar, you goddamn—the police has lied to me all the time. I have never lied, don't ever tell me that I'm a liar, you understand me, you—

"The Court: Just a minute, restrain him."

of questioning the court restricted the testimony to what the defendant told the witness about Dr. Baker.

 We think that it was proper for the District Court to allow Dr. Blackmun to testify as to what the defendant said to Dr. Blackmun. In the first place, no definite statement was made by Dr. Blackmun concerning the medical report by Dr. Baker. Dr. Blackmun only said that "supposing a Dr. Baker has met" the defendant "and claims he's perfectly well." This inconclusive answer did not prejudice the defendant.[6] Second, the limitation of the question as to what the defendant told Dr. Blackmun is entirely proper, since a statement made for the purposes of medical diagnosis is a hearsay exception. Louisiana & Arkansas Ry. Co. v. Johnson, 214 F.2d 290, 293 (5th Cir.), cert. denied, 348 U.S. 875, 75 S.Ct. 111, 99 L.Ed. 688 (1954); United States v. Calvey, 110 F.2d 327, 330 (3rd Cir. 1940); United States v. Nickle, 60 F.2d 372, 373–374 (8th Cir. 1932); Shell Oil Co. v. Industrial Commission, 2 Ill.2d 590, 119 N.E.2d 224, 231 (1954); Proposed Rules of Evidence for United States Courts and Magistrates, Rule 803(4), 51 F.R.D. 315, 419–420.

Fourth, the defendant contends that the District Court should not have excluded the testimony of Dr. Donald Plotnick, who attempted to express as an expert opinion that incarceration in a federal penitentiary "could create mental problems which could lead to one not knowing right from wrong and being able to act within the reasonable law."

Dr. Plotnick, a past inmate for eleven months at Lewisburg Penitentiary, is a practicing podiatrist, who also is preparing a book on prison life with the aid of interviews with inmates of several institutions. The doctor had never talked to the defendant and knew nothing about the conditions of the prisons in which defendant had been incarcerated. The District Court held that Dr. Plotnick was not an expert and could not testify as a lay witness.

██ ██ Determination of the qualifications of an expert and the question of whether expert opinion upon the objected matter should be permitted are questions usually left to the discretion of the trial court and will not be reversed unless the ruling is prejudicial. White v. United States, 399 F.2d 813, 819 (8th Cir. 1968). It was well within the discretion of the District Court to determine that a podiatrist, who had never met the defendant and did not know the conditions experienced by this defendant at Leavenworth Prison, could not qualify as an expert on all federal prisons and mental health so as to make such a broad opinion that all federal prisoners could have mental problems that would relieve them from subsequent criminal responsibility. The attempted hypothesis with its obvious syllogism had no adequate scientific or experimental background. Under its pervasive cloak all inmates of penitentiaries are deranged and thus irresponsible for their aberrant behavior. This has not proved to be the case.

Judgment of conviction affirmed.

6. The extent and scope of cross-examination lies within the trial court's discretion and reversal is only commanded when "an abuse of discretion leads to prejudice." United States v. Hiken, 458 F.2d 24, 26 (8th Cir. 1972), cert. denied, 409 U.S. 842, 93 S.Ct. 41, 34 L.Ed.2d 81 (1972).