**UNITED STATES of America,
Appellee,**

**v.**

**Michael Anthony GOCKE, Appellant.**

**No. 73–1888.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 16, 1974.

Decided Nov. 29, 1974.

Certiorari Denied March 17, 1975.
See 95 S.Ct. 1407.

John C. Calhoun, Jr., Little Rock, Ark., for appellant.

Fletcher Jackson, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before MATTHES, Senior Circuit Judge, and ROSS and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Michael A. Gocke, convicted of counterfeiting Federal Reserve Notes with intent to defraud, in violation of 18 U. S.C. § 471, asserts three principal trial errors in this appeal: (1) the admission into evidence of a taped conversation of defendant with an accomplice made without defendant's knowledge or consent and containing a reference to prior incarceration; (2) the admission of evidence of involvement in another counterfeiting activity; and (3) refusal of the trial judge to require disclosure of a confidential informant. Upon consideration of the full record, we affirm the judgment of conviction.

Gocke was convicted following a jury trial before the Honorable J. Smith Henley, Chief United States District Judge for the Eastern District of Arkansas. The evidence disclosed the acquisition of a printing plant and its subsequent use in a scheme to counterfeit twenty-dollar Federal Reserve Notes. First, Gocke, a printer formerly employed by Mid-State Printing Company in North Little Rock, Arkansas, introduced the company's owner to Eugene Wesley Howard.[1]

---

1. Howard's conviction on related charges was affirmed, see United States v. Howard, 504 F.2d 1281 (8th Cir. 1974).

Howard, with money borrowed from Bill Houston Carter, purchased the Mid-State plant on November 24, 1972, and soon thereafter various repairs were undertaken, including the construction of a divider wall between the printing machinery and the front of the plant. During this period, which continued into January, 1973, Gocke placed several orders for printing supplies including "ivory rising bond" paper, "husky index" paper, an assortment of black inks and green inks, "Dutch red" ink and "tulip tint" blue ink. Bing Priest, of the Fine Paper Company, with whom Gocke placed these orders, testified that Gocke was dissatisfied with the cut of the ivory rising bond paper and returned it for recutting. He explained to Priest that he intended to print stock certificates with two colors on one side and one on the other. The paper was recut and delivered back to Gocke on January 12, 1973.

On January 12, 1973, the Mid-State plant was placed under surveillance by law enforcement agents who were acting on a tip. They observed Gocke's car parked at the plant at several intervals on that date. When the counterfeit items were ultimately seized from Euguene Wesley Howard, they were found packed in boxes stuffed with newspapers dated January 11 and 12, 1973.

At trial, Bill Houston Carter testified that he had been present during the printing of the currency. He stated that Gocke had operated the press and had assisted in cleaning up the plant after completion of the job. Although Carter had been acting as an accomplice at that time, he agreed in March, 1973, to cooperate with the Secret Service. Wearing a recording device provided by the Secret Service, Carter conversed with Gocke about the counterfeit money. Gocke stated to Carter that he had thrown his share of the notes into the river. (A suitcase full of counterfeit currency was found in the Arkansas

River by a fishing party in the early part of 1973.) Carter and Gocke also discussed ways to sell a quantity of counterfeit money which was part of Howard's share and which Gocke proposed to borrow from Howard.

Eugene Wesley Howard was arrested on March 16, 1973, and large quantities of counterfeit twenty-dollar Federal Reserve Notes and counterfeit Arkansas drivers' licenses were seized from his possession. The notes were printed on ivory rising bond with two colors on one side and one on the other. On one of these notes, a latent fingerprint of Gocke's was discovered after the application of ninhydrin and acetone by a fingerprint expert. A print of Gocke's similarly appeared on one of the notes turned over to the Secret Service by Bill Houston Carter.[2] Sixty-three of the counterfeit drivers' licenses, printed with ink resembling "Dutch red" and "tulip tint blue," revealed Gocke's fingerprints.

1. *The Tape Recording.*

(a) Reference to prior incarceration.

■ Appellant first contends that the playing of his tape-recorded conversation before the jury constituted prejudicial error since that conversation contained a reference to his prior incarceration. The actual remark involved his reference to a girl he had known "before I was in the penitentiary."

In concluding that Gocke's case was not unfairly prejudiced, we note first that the remark in question was barely audible. It was not contained in the transcript of the tape prepared by the government, nor was it heard by the court or counsel when it was monitored outside the jury's hearing. The defendant heard the reference as it was played to the jury; again, neither the court nor counsel heard it. Only when it was played a third time, again outside the jury's hearing, was the remark detected.

2. The fingerprint expert testified that he would be unable to identify any latent fingerprints on the currency found in the Arkansas River.

Judge Henley offered to caution the jury not to consider the remark, but Gocke's attorney requested that no such instruction be given.

Even if we assume that the jury did in fact hear the reference to a prior incarceration, we do not find a new trial to be warranted. In the past we have held that similar comments of a brief and passing nature, inadvertently made by witnesses, constitute harmless error. United States v. Carter, 448 F.2d 1245 (8th Cir. 1971), cert. denied, 405 U.S. 929, 92 S.Ct. 981, 30 L.Ed.2d 802 (1972); United States v. Christian, 427 F.2d 1299 (8th Cir.), cert. denied, 400 U.S. 909, 91 S.Ct. 153, 27 L.Ed.2d 148 (1970). *See also* United States v. Dillinger, 341 F.2d 696 (4th Cir. 1965). We reach the same conclusion here.

(b) Constitutional challenges.

■ Gocke also attacks the admission of the tape in general on the ground that it constitutes evidence seized in violation of his Fourth and Fifth Amendment rights. We reject these contentions. The Fourth Amendment claim must fail on the basis of United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). There, four Justices concluded that electronic transmittals and recordings of conversations do not violate the Fourth Amendment, provided that one party to the conversation is a willing participant in the surveillance plan. Justice Black, in a brief concurring opinion, referred to the views expressed in his dissenting opinion in Katz v. United States, 389 U.S. 347, 364, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)—that the Fourth Amendment does not protect against eavesdropping and that all conversations lie outside the scope of its safeguards. We have likewise upheld such surveillances made with the consent of one of the parties. United States v. Skillman, 442 F.2d 542

(8th Cir.), cert. denied, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971); *see* United States v. Howard, *supra*, 504 F.. 2d at 1287 n. 13. Here, Bill Carter testified that he willingly wore the recording device which recorded his conversation with Gocke.

■ We also reject appellant's Fifth Amendment claim wherein he argues that he should have been given his *"Miranda* warnings" before participating in the self-incriminating conversation with Carter. Gocke voluntarily discussed the counterfeit currency with Carter and in no way was he unconstitutionally *"compelled * * * to be a witness against himself."* The rules enunciated in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), have no application in such circumstances. Hoffa v. United States, 385 U.S. 293, 303, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

(c) Profane language.

■ In appellant's final challenge to the admission of the tape, he contends that his use of profanities in his recorded conversation with Carter improperly prejudiced the jury. The court properly admonished the jury that this aspect of the recording was irrelevant and should be disregarded.[3] Under such circumstances, the fact that the jury heard Gocke utter these profanities did not rise to the level of prejudicial error. *See* United States v. Howard, *supra*; Annot., 58 A.L.R.2d 1024, § 8 at 1040 (1958).

2. *Evidence of Other Criminal Activity.*

Appellant contends that admission of the counterfeit drivers' licenses, sixty-three of which contained Gocke's fingerprints, was prejudicial error. We disagree. The counterfeit drivers' licenses were seized from Howard on March 16 or 17, along with a large quantity of

3. Judge Henley stated in part:
I hope you won't be offended by the profanity in [this tape], or vulgarity, or crude expressions. But, to the extent that you are, you must clearly understand that this is not a part of your consideration of the case against the defendant, Mr. Gocke.

counterfeit Federal Reserve Notes, one of which likewise bore Gocke's fingerprint. Once again, we repeat our holding in United States v. Cochran, 475 F.2d 1080, 1082 (8th Cir.), cert. denied, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973):

> Well established rules have developed concerning the admission of evidence of other criminal conduct. Although this evidence is generally inadmissible since it suggests that the defendant has a propensity to commit crime, the trial court can in its discretion admit relevant evidence of other criminal acts and *reversal is only commanded when 'it is clear that the questioned evidence has no bearing upon any of the issues involved.'* Wakaksan v. United States, 367 F.2d 639, 645 (8th Cir. 1966), cert. denied, 386 U.S. 994, 87 S.Ct. 1312, 18 L.Ed.2d 341 (1967). The trial court in determining admissibility weighs the prejudicial effect against the probative value of the evidence of the other criminal conduct. Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85, 90 (1964). In applying this weighing analysis, trial courts are aided by recognized exceptions to the admissibility of evidence of other crimes or criminal conduct. Such evidence is relevant to prove '(1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) identity of the person charged with the commission of the crime on trial.' Drew v. United States, *supra,* 331 F.2d at 90 (footnote omitted), *quoted* in Love v. United States, *supra,* 386 F.2d at 266; United States v. Lewis, 423 F.2d 457, 459

(8th Cir. 1970); Proposed Rules of Evidence for United States Courts and Magistrates, Rule 404(b), 51 F. R.D. 315, 346. [Footnote omitted; emphasis supplied.]

*See also* United States v. Thompson, 503 F.2d 1096 (8th Cir. 1974); Sears v. United States, 490 F.2d 150, 152 (8th Cir. 1974); United States v. Olsen, 487 F.2d 77, 79–80 (8th Cir. 1973), cert. denied, 415 U.S. 993, 94 S.Ct. 1594, 39 L. Ed.2d 890 (1974); O'Reilly v. United States, 486 F.2d 208, 211–212 (8th Cir.), cert. denied, 414 U.S. 1043, 94 S.Ct. 546, 38 L.Ed.2d 334 (1973); C. McCormick, Law of Evidence, § 190 (2d ed. 1972).

The government offered direct testimony by an accomplice that Gocke had printed the counterfeit money. In addition, the government offered corroboration by way of Gocke's fingerprints found on some of the counterfeit money which had been seized or recovered. The business relationship between Gocke and Howard was well established and it was no ground for exclusion of the drivers' licenses that they were found in Howard's possession.

 A violation of 18 U.S.C. § 471 requires that the counterfeiting be undertaken "with intent to defraud." Where specific intent and guilty knowledge are elements of the crime charged, evidence of related criminal activity tending to establish those elements is generally admissible. *See* United States v. Spica, 413 F.2d 129, 131 (8th Cir. 1969). The fingerprint evidence of Gocke's prior possession of the drivers' licenses was likewise admissible to show a participation in a common scheme or plan,[4] United States v. Thompson, *supra,* as well as to negate " 'the likelihood that the crime [counterfeiting money] was committed as a result of inadvertence, accident or mistake.' 29 Am.Jur.2d, Ev-

---

4. Appellant has asserted in his brief that the drivers' licenses cannot now be said to have been introduced to show a common scheme or plan since the jury was never instructed to consider that evidence for that purpose. We must reject that argument. In the past, even where we have disagreed with the particular theory on which other crimes' evidence was admitted at trial, we have nonetheless upheld its admission if an alternative theory would have justified the jury's consideration thereof. *See* United States v. Buckhanon, 505 F.2d 1079 at 1084 (8th Cir. 1974).

idence § 321 (1967)." Atwell v. Arkansas, 426 F.2d 912, 914 (8th Cir. 1970).

Other evidence, including the taped conversation between Gocke and Carter, also supported the government's contention that Gocke's printing activity was carried out willfully and with intent to defraud. The evidence respecting the drivers' licenses was in proportion to its place in the case. There was testimony that Gocke had purchased some ink similar to that used on the licenses. Aside from that, the evidence came in with the evidence of the counterfeit money seized from Howard at the same time. The prejudicial effect was thus minimal in relation to the probative value of the evidence. The District Judge, both at the time the licenses were offered and in the final charge to the jury, carefully and correctly limited the jury's consideration of the licenses to the issue of defendant's knowledge, willfulness and intent to defraud, as well as "the location, the whereabouts and capabilities of the defendant to commit the crime with which he is charged in this indictment." *Cf.* United States v. Olsen, *supra,* 487 F.2d at 80.

 In so holding we do not depart from our view that evidence of separate and distinct prior or subsequent criminal activity should be plain, clear and conclusive. *See* United States v. Vaughn, 486 F.2d 1318, 1321 (8th Cir. 1973) ; *cf.* United States v. Sears, *supra,* 490 F.2d at 152–153. Nor will we permit mere evidence of bad character or evidence of suspicious conduct unrelated to a common scheme or plan, neither of which would be relevant to show knowl-

edge or negate accident or mistake. *See* United States v. Clemons, 503 F.2d 486 (8th Cir. 1974). But we do not require in each case that evidence be that of an identical offense.[5] It is enough that the evidence be of similar involvement reasonably related to the offending conduct [6] and be presented in a manner in which prejudice does not outweigh its probative value. These requirements were met in this case.

### 3. *The Informant.*

Finally, appellant asserts that the District Court erred in failing to require disclosure of the identity of the confidential government informer upon whose information the investigation of Gocke began. We have thoroughly searched the record and have found no indication that this informant was the sole witness against Gocke or was an active participant in the crime for which he was charged. Therefore, this case is factually unlike Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), wherein the Supreme Court held that under such circumstances the government must either disclose the informant's identity or risk dismissal of the case. *See* Rosenthal, The Informer Privilege in Criminal Prosecutions, 11 Hastings L.J. 54 (1959). On the other hand, "[i]n cases involving the 'tipster' type of informant, who merely conveys information to the government but neither witnesses nor participates in the offense, courts generally hold that disclosure is not material and therefore not required." United States v. Barnes, 486 F.2d 776, 778 n. 3 (8th Cir. 1973). *See also* McLawhorn v. North Carolina, 484

---

5. Compare United States v. Broadway, 477 F.2d 991 (5th Cir. 1973).

6. Professor Wigmore writes :
 It is just this requirement of similarity which leaves so much room for difference of opinion and accounts for the bewildering variances of rulings in the different jurisdictions and even in the same jurisdiction and in cases of the same offence. Some judges incline to treat the judicial test of probative value as identical with the common-sense test, and to admit such

instances as bear a similarity liberally interpreted by the standard of every-day reasoning. Other judges set their faces firmly against every instance which is not on all fours with the offence in issue, regardless of the consideration that justice consists quite as much in protecting the public against evil doers as in showing mercy to those whose guilt has been more or less skillfully concealed.

2 J. Wigmore, A Treatise on Evidence § 302, at 200–01 (3d ed. 1940).

F.2d 1 (4th Cir. 1973) ; United States v. Clark, 482 F.2d 103 (5th Cir. 1973).

 In his brief, appellant concedes that he sought the identity of an informant "whose tip originated this investigation." No argument that the informer was a participant in or a witness to the crime is presented, instead only the contention that such a tipster may have had direct knowledge helpful to the defendant's case. We find no error in the District Court's refusal to require disclosure.[7]

Affirmed.

7. Each such case must be considered on its own facts, Roviaro v. United States, 353 U. S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Where the significance of the informer's role in the crime is not immediately apparent, some showing by the defendant of the possible value of the informant's testimony should be required. See The Supreme Court, 1956 Term, 71 Harv.L.Rev. 94, 112 (1957). Thus, where we have been in doubt as to whether the circumstances of a particular case require disclosure, we have remanded for an *in camera* hearing for further factual development. See United States v. Barnes, 486 F.2d 776 (8th Cir. 1973) ; United States v. Hurse, 453 F.2d 128 (8th Cir. 1971). Where, as here, however, the appellant has failed to do more than suggest that the informant's tip prompted an investigation of the crime, a remand is totally unwarranted.