**UNITED STATES of America, Appellee,**

v.

**Mary Delores MAESTAS, Appellant.**

**No. 76–1624.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1976.

Decided April 14, 1977.

As Amended June 2, 1977.

Certiorari Denied June 13, 1977.
See 97 S.Ct. 2936.

Patrick J. O'Donnell, Lincoln, Neb., for appellant.

Jeffrey A. Bogue, Asst. U. S. Atty., Omaha, Neb., for appellee; Daniel E. Wherry, U. S. Atty., Omaha, Neb., on brief.

Before MATTHES, Senior Circuit Judge, and STEPHENSON and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Mary Delores Maestas appeals her conviction on two counts of interstate transportation of falsely made, forged, or counterfeit securities, in violation of 18 U.S.C.§ 2314. She challenges the admission of other crimes evidence and of certain evidence seized in a search pursuant to a warrant. She contends also that she was entitled to a mistrial as a result of a witness's prejudicial comments. We find no error, and affirm the conviction.

The indictment charged the transportation of two falsely made, forged, and counterfeit cashier's checks, each in the amount of $4,144.67 and both drawn on the Harris Trust and Savings Bank, of Chicago. At trial, the government proved that each check was cashed by a woman, one on June 3, 1975, in North Platte, Nebraska, and the other on June 6, 1975, in Kearney, Nebraska. Each transaction occurred at a bank; on each occasion the woman who cashed the check deposited a portion of the proceeds to the account of a legitimate depositor and received the remainder in cash. Both checks went through normal banking channels to Chicago, where they were found to be counterfeit.

Appellant's fingerprints were found on the check cashed in North Platte and on both the check and deposit slip used in Kearney. The government proved that appellant was in Kearney on June 4. However, there was no eyewitness identification of appellant as the person who cashed either check.

The government introduced substantial evidence of appellant's participation in other criminal activity. On May 9, 1975, a bogus Harris check was passed in El Paso, Texas. The check bore appellant's fingerprints, and a teller identified appellant as the person who cashed it. On April 16, 1975, a counterfeit check drawn on the National Bank of Austin, of Chicago, was cashed in Denver. A suspicious teller took a picture of the woman who cashed it. An FBI agent later showed the picture to appellant, who said the picture made her look "awfully heavy."

In four more transactions involving counterfeit Harris Trust checks, appellant's fingerprints were found on either the check or the deposit slip. All these transactions occurred in April or May of 1975. All the

checks bore notations indicating that they had been presented for payment in Chicago. One Harris check was introduced which did not bear appellant's fingerprints. The check was payable to Sylvia Ram. The government was allowed to prove that Ms. Ram's mail had been tampered with prior to the cashing of this check, and that a fingerprint of appellant was found on a personal check which had been tampered with.

The District Court[1] also allowed the government to introduce evidence seized in a search of appellant's apartment made pursuant to a search warrant. This evidence included counterfeit drivers' licenses, social security cards, and corporate checks.

On this evidence, the jury found appellant guilty on both counts with which she was charged.

## I.

Appellant's principal contention is that the other crimes evidence was improperly admitted. Admissibility of this evidence is governed by Fed.R.Evid. 404(b), which provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 403 authorizes the district court to exclude such evidence, even though relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Our task is to assess the relevancy and the probative value of the challenged evidence; if it meets the requirements of Rule 404(b) we may not reverse the ruling of the District Court unless we also find that the prejudice from admitting the evidence substantially outweighed its probative value. In making that evaluation, we must give great deference to the district judge, who saw and heard the evidence. *United States v. Nichols*, 534 F.2d 202 (9th Cir. 1976); *United States v. Gocke*, 507 F.2d 820, 824 (8th Cir. 1974), *cert. denied*, 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975); *United States v. Skillman*, 442 F.2d 542, 551–52 (8th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971).

Prior to July 1, 1975, the effective date of the Federal Rules of Evidence, the federal courts developed a substantial body of case law dealing with the use of other crimes evidence. These pre-Rules decisions must now be harmonized and read in consonance with the most recent statement of congressional policy.[2]

---

1. The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

2. Prior to the adoption of the Federal Rules of Evidence, this Court applied a balancing test to assess the use of evidence of other crimes. Even if the evidence were relevant to show motive, intent, common plan or scheme, identity, or absence of mistake, *see, e. g., United States v. Conley*, 523 F.2d 650, 653 (8th Cir. 1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 327 (1976); *United States v. Cochran*, 475 F.2d 1080, 1082 (8th Cir.), *cert. denied*, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973), we held that it would only be admissible if "(1) [A]n issue on which other crime evidence may be received is raised; (2) . . . the proffered evidence is relevant to that issue; (3) . . . the evidence is clear and convincing; and (4) . . . the probative worth outweighs the probable prejudicial impact." *Unit-*

*ed States v. Clemons*, 503 F.2d 486, 489 (8th Cir. 1974).

We also held prior to July 1, 1975, that where evidence of other crimes is relevant, reversal is only commanded when "it is clear that the questioned evidence has no bearing upon any of the issues involved." *United States v. Belle*, 516 F.2d 578, 581 (8th Cir. 1975), *quoting United States v. Gocke*, 507 F.2d 820, 824 (8th Cir. 1974), and *United States v. Cochran*, 475 F.2d 1080, 1082 (8th Cir.), *cert. denied*, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973).

After July 1, 1975, this Court analyzed other crimes problems without specific use of the four-pronged *Clemons* test in *United States v. Aaron*, 553 F.2d 43 (8th Cir. 1977); *United States v. Moss*, 544 F.2d 954, 961 (8th Cir. 1976); *United States v. Porter*, 544 F.2d 936, 939 (8th Cir. 1976); and *United States v. Wixom*, 529 F.2d 217, 220 (8th Cir. 1976). *But see United States v. Jardan*, 552 F.2d 216 (8th Cir. 1977); *United States v. Davis*, 551 F.2d 233

## A.

Several matters on which other crimes evidence is admissible were contested in the present case. Particularly at issue were intent, or guilty knowledge, and identity. It was incumbent on the government to prove that appellant was the person who cashed the two checks which were the subject of the indictment. In the absence of any eyewitness identification, identity was very much in issue. In addition, the government was required to prove the intent which is an element of the § 2314 offense. *United States v. Spica*, 413 F.2d 129, 131 (8th Cir. 1969); *see United States v. Gocke, supra*, 507 F.2d at 824.

Appellant's defense to the fingerprint evidence on the checks charged in the indictment was the inconclusiveness of such evidence to show a purposeful law violation. Appellant's counsel sought by vigorous cross-examination to convince the jury that appellant's fingerprints could have been placed on the checks for a variety of reasons at any time before they were presented to the bank.[3] Thus the proof of identity, a common plan or scheme, and the absence of mistake became important.

The evidence that appellant cashed other counterfeit checks that six of these checks were drawn on the same bank as were the checks described in the indictment, that all were cashed within a two month period, and that many were cashed in split deposit transactions, was highly probative on these issues. It tended to prove both that she cashed the checks and that she did so as part of a scheme, rather than through inadvertence or mistake. *See United States v. Wetzel*, 514 F.2d 175, 178 (8th Cir.), *cert. denied*, 423 U.S. 844, 96 S.Ct. 80, 46 L.Ed.2d 65 (1975); *United States v. Gocke, supra*; *United States v. Gray*, 464 F.2d 632, 636 (8th Cir. 1972); *United States v. Spica, supra*. It is clear that the requirements of Rule 404(b) were satisfied. In addition, Rule 403 presents no bar to the admission of this evidence, in that its probative value was not substantially outweighed by any prejudicial impact.[4] *See United States v. Nichols, supra*.

Appellant contends that the evidence of other checks is inadmissible because the government failed to prove every element of each of the other crimes concerning which evidence was introduced. She relies on *United States v. Broadway*, 477 F.2d 991 (5th Cir. 1973), where the Fifth Circuit, in a § 2314 prosecution, excluded evidence of the passing of other forged money orders, on the theory that it had not been proved that, although defendant had possessed the money orders, she was also the person who cashed them. The Fifth Circuit held that, where evidence of another crime is used to prove intent, the other crime must include

---

(8th Cir. 1977); *United States v. McMillian*, 535 F.2d 1035, 1038 (8th Cir. 1976); *United States v. Bledsoe*, 531 F.2d 888 (8th Cir. 1976). *See* 1 Fed.R.Evid.News 47 (1976).

Under *Clemons* and succeeding cases, other crimes evidence was admitted if "the probative worth" of the challenged evidence "outweigh[ed] the prejudicial impact." Under Rule 403, relevant evidence of other crimes is excluded if "its probative value is substantially outweighed by the danger of unfair prejudice . . . ."

Under the new rules "the trial judge may exclude [other crimes evidence] only on the basis of those considerations set forth in Rule 403, *i.e.*, prejudice, confusion, or waste of time." S.Rep.No.1277, 93d Cong., 2d Sess. 25 (1974); *reprinted in* [1974] U.S.Code Cong. & Ad.News. pp. 7051, 7071. Clearly, however, evidence which is vague and speculative is not competent proof and should not be admitted into evidence.

3. The government was entitled to anticipate this obvious defense. *See United States v. Conley*, 523 F.2d 650, 654 (8th Cir. 1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 327 (1976); *United States v. Cirillo*, 499 F.2d 872, 888–89 (2d Cir.), *cert. denied*, 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974).

4. Our Court has held that a relevant consideration is the amount of time and evidence required during trial to develop the evidence of other criminal activity. In *United States v. Clemons*, 503 F.2d 486, 491 (8th Cir. 1974), we held that such evidence so overshadowed the principal case that it very likely confused the jury and unduly prejudiced the defendant. Our review of the transcript satisfies us that in this case there has not been a prejudicial distortion by reason of excessive preoccupation with evidence of other criminal activity.

"the essential physical elements of the offense charged," and those elements "must be clearly proven by competent evidence." 477 F.2d at 995.

We expressed our reservations about the Fifth Circuit's holding in *United States v. Gocke, supra,* 507 F.2d at 825, where we said:

> [W]e do not require in each case that evidence be that of an identical offense. It is enough that the evidence be of similar involvement reasonably related to the offending conduct and be presented in an manner in which prejudice does not outweigh its probative value. [footnotes omitted]

This reservation was again noted in *United States v. Belle,* 516 F.2d 578, 581 (8th Cir. 1975).[5] To this we have added that the evidence must not be of "vague and uncertain character." *United States v. Spica, supra,* 413 F.2d at 129.

In this case the evidence of the other crimes is of a series of checks, cashed in similar transactions, each bearing appellant's fingerprints, and some tied to her by direct evidence. This evidence shows similar involvement in related offenses; as indicated above, its prejudicial impact does not substantially outweigh its probative value. It is not of "vague and uncertain character." The evidence thus is admissible, notwithstanding the absence of direct proof that appellant was the person who cashed certain of the checks.[6]

## B.

■ Appellant also challenges as the improper use of other crimes evidence the admission of the materials seized from her Denver apartment, which included counterfeit drivers' licenses, social security cards, and corporate checks. The connection between appellant and these items was clear and convincing. Her possession of these items, which would be of use in a scheme to pass counterfeit checks, was highly probative of her participation in such a scheme. The quantity in which they were found indicated that she did not possess the materials by mistake or inadvertence.

In *United States v. Gocke, supra,* we approved the admission of counterfeit drivers' licenses which had been in the possession of a defendant charged with passing counterfeit federal reserve notes. We found the licenses probative on the issues of the defendant's participation in a common scheme or plan, and the absence of inadvertence or mistake. The similar materials involved in this case were likewise relevant; their probative value was not substantially outweighed by their prejudicial impact.[7]

---

5. The rule in *United States v. Broadway,* 477 F.2d 991 (5th Cir. 1973), has been criticized by the Ninth Circuit as "overly restrictive." *United States v. Riggins,* 539 F.2d 682, 683 (9th Cir. 1976).

6. In *United States v. Riggins,* 539 F.2d 682 (9th Cir. 1976), the Ninth Circuit upheld the admission, in a § 2314 prosecution, of a forged money order not charged in the indictment. This money order was linked to the defendant by a fingerprint; it was admitted despite an absence of direct proof that the defendant was the person who cashed it.

In *United States v. Pickens,* 465 F.2d 884, 885 (10th Cir. 1972), also a § 2314 case, the Tenth Circuit upheld the admission of a stolen money order, not charged in the indictment, which was connected to the defendant by a fingerprint.

7. The Advisory Committee Note to Fed.R.Evid. 403 defines "unfair prejudice" as follows:

"Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.

It further provides that,

[i]n reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction.

In his final charge, Judge Urbom instructed the jury, without objection, as follows:

Evidence that an act was done at one time, or on one occasion, is not any evidence or proof whatever that a similar act was done at another time, or on another occasion. That is to say, evidence that a defendant may have committed an earlier act of a like nature may not be considered by the jury in determining whether the accused committed any act charged in the indictment. Such evidence may be used, however, to show the identity of the person committing the acts alleged in the indictment.

Additionally, if the jury should find beyond a reasonable doubt from other evidence in

## II.

Appellant makes a second objection to admission of the evidence seized from her apartment. She contends that there was an insufficient showing of probable cause prior to the issuance of the warrant which led to the seizure of the materials. The warrant was issued by a Colorado state judge on the basis of an affidavit by a Denver police officer. The affidavit showed that a large number of bogus checks had come into the Denver area, and that appellant had been linked to certain of the checks by fingerprint evidence. The Denver police had learned from Chicago police that a search in that city had disclosed evidence that counterfeit checks and identifications were being sent to a "Dee Lewis" in Denver; Dee Lewis was a name appellant had been known to use.

Reading the affidavit in a common sense fashion, we conclude that there was ample reliable information before the issuing judge to support a finding of probable cause that appellant had a quantity of counterfeit materials in her possession at her residence. *See United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *United States v. Burgard*, 551 F.2d 190 at 192 (8th Cir., 1977); *United States v. Samson*, 533 F.2d 721, 723 (1st Cir. 1976); *United States v. Rahn*, 511 F.2d 290, 293 (10th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975). The warrant was properly issued.

## III.

Appellant's final assertion of error relates to certain testimony of Ruth Hoyt, the El Paso, Texas, bank teller who identified appellant as having cashed one of the counterfeit checks. On direct examination the following occurred when the witness was handed a check and a deposit ticket:

Q: Is there any other reason that you remember these particular exhibits?

A: I tell you what; I can remember them because these are the same ones that were handed to me at the trial in El Paso, Texas.

The District Court immediately ordered this answer stricken. On cross-examination, the witness stated, in response to a question, that she "had been had" by appellant, and this was why she remembered her. Appellant's counsel subsequently moved for a mistrial, contending that the witness's statements had unfairly prejudiced the jury. The District Court, after careful consideration, refused a mistrial. Appellant claims this was error.

The District Court has broad discretion in determining whether claimed improper prejudicial testimony has so tainted the trial as to require a mistrial. *See United States v. Aaron*, 553 F.2d 43 (8th Cir. 1977); *United States v. Splain*, 545 F.2d 1131 at 1133 (8th Cir. 1976); *United States v. Bear Killer*, 534 F.2d 1253, 1261 (8th Cir. 1976). The District Court properly exercised that discretion here. As Judge Urbom pointed out, any reference to a trial in Texas did not import a criminal trial, and certainly did not imply a conviction. Similarly, references to the witness's having "been had" could not have so prejudiced the jury as to make a fair trial impossible.

Affirmed.

the case that the accused did the act charged in the particular count under deliberation, then the jury may consider evidence as to an alleged earlier act of a like nature in determining the state of mind or intent with which the accused did the act charged in the particular count. And where proof of an alleged earlier act of a like nature is established by evidence which is clear and conclusive, the jury may, but is not obliged to, draw the inference and find that in doing the act charged in the particular count under deliberation the accused acted wilfully and with specific intent and not because of mistake or accident or other innocent reason.

Appellant does not object to the sufficiency of this instruction. It is apparent that no plain error is shown. *See* Fed.R.Crim.P. 30 and 52(b).