**UNITED STATES of America, Appellee,**

v.

**Raymond Leon BELLE, Appellant.**

**No. 74–1988.**

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1975.

Decided May 9, 1975.

---

**3.** As it appears to have been in United States v. Gaskins, *supra*, 485 F.2d at 1047 n. 5.

Samuel A. Goldblatt, St. Louis, Mo., for appellant.

Richard C. Coughlin, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before MATTHES, Senior Circuit Judge, and ROSS and WEBSTER, Circuit Judges.

MATTHES, Senior Circuit Judge.

This criminal prosecution is based upon a violation of 18 U.S.C. § 2314, which makes it an offense to unlawfully and fraudulently transport in interstate commerce a falsely made, forged, altered, or counterfeited security.

Raymond Leon Belle was found guilty on the fourth count of a four-count indictment. That count charged that on or about September 6, 1973, Belle did unlawfully, wilfully and intentionally cause to be transported in interstate commerce a falsely made, forged, and counterfeited check in the amount of $376.55, in violation of the above mentioned statute.[1]

Belle has appealed from the judgment of conviction.[2] He does not challenge the sufficiency of the evidence to warrant submission of the case to the jury. A review of the pertinent facts is in order, however, because of a claim of error advanced by appellant relating to the admission of certain evidence.

In the spring of 1973, a number of blank checks of the Blackburn Construction Company of East St. Louis, Illinois, were stolen from the firm which was in charge of handling the payroll of Blackburn. The checks were numbered and imprinted with the name of the maker, "Blackburn Construction Company . . . East St. Louis, Illinois," and with the

---

1. Counts 1, 2, and 3 of the indictment were similar to Count 4 and charged Belle with causing the interstate commerce transportation of three other forged and counterfeited checks. These counts were dismissed by the district court on motion of Belle at the close of the evidence.

2. The court imposed a five-year sentence under 18 U.S.C. § 4208(a)(2).

name of the payor bank, "Southern Illinois National Bank of East St. Louis."

On September 4, 1973, three of the stolen checks numbered 268, 269, and 270, each drawn on the account of Blackburn Construction Company in the amount of $376.55, were presented to and cashed by the Gateway National Bank in St. Louis, Missouri. Each check was payable to the order of "Jimmie Johnson" (the payee's name was typed), and were purportedly signed by one Robert L. Mitchum, a contractor who shared offices with one of the officers of Blackburn. Mitchum was not authorized by the Blackburn company to sign checks for it and his signature on the three checks had been forged. All three checks were endorsed "Jimmie Johnson" and bore an account number of Gateway National Bank, 608462.

The evidence shows that a person by the name of Jimmie Johnson did have an account at the Gateway National Bank. He was produced as a witness by the Government and testified unequivocally that he did not endorse the checks numbered 268, 269 and 270, or check number 263, hereinafter discussed. Johnson also testified that he lost his wallet some time during the year of 1973. Apparently the number of his bank account was in the wallet.

Henrietta Simpson was another intended victim of the check forgery scheme. Mrs. Simpson conducted her banking business with a bank in Arnold, Missouri. Her purse, containing a number of blank checks, was stolen prior to September of 1973. Mrs. Simpson's name and address and a check number were imprinted on each of the stolen checks.

This brings us to check 263, the subject of Count 4 of the indictment. It, too, was made payable to the order of Jimmie Johnson in the amount of $376.55, was purportedly signed by Robert L. Mitchum, and was endorsed "Jimmie Johnson 608462." On September 6,

1973, this check 263 was presented by appellant to the Gateway Bank, along with a check numbered 218 drawn on the account of Henrietta Simpson and carrying the purported signature of Mrs. Simpson. The Simpson check 218 was payable in the amount of $180.00 to "J. Johnson" and carried the same endorsement as check 263, "Jimmie Johnson 608462."

On the same day, September 6, appellant tendered two additional checks together to Gateway. One was Blackburn check 262, made payable and endorsed in precisely the same manner as Blackburn check 263. The other check was Simpson check 219, payable to "J. Johnson" and carrying the same forged endorsement of Jimmie Johnson and the Gateway account number. Mrs. Simpson, a witness for the Government, testified that she had not issued either check 218 or 219 and that her signature on each had been forged.

Some of the bank tellers became suspicious of the appellant during the course of his visits to the bank on September 6 with the various checks above mentioned. They reported their suspicions to one of the officers of the bank, who in turn contacted the F.B.I. This agency conducted an extensive investigation, which eventually led to the arrest of appellant, the filing of the indictment, and his conviction.

Appellant was identified by a number of the bank employees during the course of the trial as the man who had presented and cashed Blackburn check 263 and the Simpson checks. In addition, fingerprints of the appellant were found on both of the Simpson checks and a palm print of the appellant was found on the back of the Blackburn check 263.

Appellant contends that inasmuch as the Simpson checks were not the subject of the indictment and did not travel in interstate commerce, prejudicial error resulted from their admission into evidence.[3] Although we have some difficul-

---

3. Appellant concedes, in his brief that the Blackburn check 263 was cashed at the Gateway National Bank and "proceeded in the nor-

mal course of business to the Southern Illinois National Bank of East St. Louis, Illinois." This concession is in accord with the evidence.

ty in understanding the exact premise for appellant's claim of error, we conclude on the basis of the cases he cites that he bottoms his contention on the proposition that evidence of other criminal conduct is ordinarily not admissible and that consequently the Simpson checks should have been excluded in this case.

The law in this area is clear and was recognized by this court as late as last November in United States v. Gocke, 507 F.2d 820 (8th Cir. 1974). There we reaffirmed that admission at trial of evidence of other criminal conduct is generally improper. We recognized, however, that there are exceptions to the rule:

> Although this evidence is generally inadmissible since it suggests that the defendant has a propensity to commit crime, the trial court can in its discretion admit relevant evidence of other criminal acts and *reversal is only commanded when "it is clear that the questioned evidence has no bearing upon any of the issues involved."* . . . Such evidence is relevant to prove "(1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) identity of the person charged with the commission of the crime on trial."

507 F.2d at 824, *quoting* United States v. Cochran, 475 F.2d 1080, 1082 (8th Cir.), cert. denied, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973). (Emphasis added in *Gocke.*) *See also* United States v. Howard, 504 F.2d 1281, 1283–84 (8th Cir. 1974); Sears v. United States, 490 F.2d 150, 152–53 (8th Cir.), cert. denied, 417 U.S. 949, 94 S.Ct. 3077, 41 L.Ed.2d 670 (1974).

In *Gocke, supra,* we held that for evidence of other criminal activity to be admissible, the evidence does not have to be that of an identical offense: it is enough that evidence is of a similar involvement reasonably related to the offending conduct and is presented in a manner in which its prejudice does not outweigh its probative value. 507 F.2d at 825. Tested by the foregoing principles, we are not inclined to fault the trial court for admitting the Simpson checks.

This record, viewed in the light most favorable to the Government, justified the jury in finding that the appellant developed a clever scheme for the purpose of cashing forged and fictitious checks. In some manner, appellant learned that one Jimmie Johnson did have an account in the Gateway National Bank, and he also obtained the number of that account. As we have seen, the forged and fictitious checks were payable to Jimmie Johnson; they were purportedly endorsed by him and they bore his account number at Gateway National Bank. Thereby, appellant was able to obtain at least part of the amount of the checks.

Of course, the telling evidence was the fingerprints on the Simpson checks and the palm print of appellant on the Blackburn check 263. At trial appellant's attorney sought to question the bank tellers' identification of appellant as the man who cashed Blackburn check 263. Clearly, considering all of the facts and circumstances, the Simpson checks were admissible to show the identity of appellant and his connection with a scheme which included the cashing of check 263, the basis of the offense charged in the indictment.

We find no merit in appellant's other claim that the court erred in denying his motion to disclose the names of Government witnesses before trial. United States v. Cole, 453 F.2d 902, 905 (8th Cir.), cert. denied, 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972); *Cf.* United States v. Williams, 502 F.2d 581

---

The interstate transport of the check in the course of banking procedures after the forged check has been cashed establishes the federal offense under 18 U.S.C. § 2314. *See, e. g.,* Periera v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954); United States v. Hill, 468 F.2d 899 (5th Cir. 1972); United States v. Boone, 460 F.2d 1285 (4th Cir. 1972).

**582**

(8th Cir. 1974). Moreover, the record reveals that the Assistant United States Attorney made full disclosure to appellant's counsel of the nature of the Government's evidence several weeks in advance of the trial. The cross examination of the Government witnesses plainly demonstrates that appellant's counsel was not only thoroughly familiar with the Government's evidence, but also knew the names of the witnesses the Government contemplated using.

The case was tried free of prejudicial error. The evidence of guilt was strong and convincing and the judgment should be and is affirmed.