UNITED STATES of America,
Appellee,

v.

Joseph Armand OLIVER, Appellant.

No. 75–1170.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 9, 1975.

Decided Oct. 31, 1975.

Rehearing and Rehearing En Banc
Denied Dec. 9, 1975.

Certiorari Denied March 22, 1976.
See 96 S.Ct. 1477.

David Robards, Asst. Federal Public Defender by David R. Freeman, Federal Public Defender, Kansas City, Mo., for appellant.

J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before VOGEL, Senior Circuit Judge, and HEANEY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

The principal issue raised in this appeal requires a determination of the evidential admissibility of polygraph examination results under the particular circumstances of this case. Appellant Joseph Oliver was indicted on December 14, 1972, with transporting the prosecutrix from Missouri to Kansas against her will for the purpose of sexual gratification in violation of 18 U.S.C. § 1201. In proceedings that foreshadow the current appeal, Oliver's conviction for that charge was reversed on appeal and remanded for a new trial.[1] Appellant's second trial in the district court[2] on December 2, 1974, is the foundation for the present appeal. In that trial a jury found him guilty, and we affirm.

The evidence adduced at the trial on behalf of the government is fundamentally based on the testimony of the victim of the alleged kidnapping. In general she testified that on November 16, 1972, while walking near her school dormitory in Kansas City, Missouri, at approximately 9:30 p. m., the defendant forced her into a car and drove to a secluded place where he raped her. The F.B.I. confirmed that fibers similar to those within the carpet in the defendant's car were found on the victim's underclothing. The thrust of the defense was designed to establish that the transportation and sex acts were consensual. This was attempted through cross-examination of the prosecutrix and by introducing evidence as to her allegedly questionable reputation. The defendant did not testify. Most significantly, the district court allowed testimony by Mr. Leonard Harrelson, an expert on polygraph examinations, who testified that a polygraph test had been consensually administered to the defendant and expressed his opinion as to whether there were indications of deception in certain responses made by the defendant during the examination. At the same time, the court excluded the testimony of another polygraph expert, Mr. Virgil Hollis.

I.

The central issue is whether the district court correctly admitted the poly-

---

1. We held that the trial court had prejudicially erred in excluding the testimony of the prosecutrix's four roommates as to her reputation within the college community for truth and veracity. *United States v. Oliver,* 492 F.2d 943 (8th Cir. 1974).

2. The Honorable William H. Becker, United States District Judge for the Western District of Missouri.

graph examination results of Mr. Harrelson and properly excluded the polygraph examination results of Mr. Hollis. On July 29, 1974, defense counsel filed an ex parte motion for permission to expend funds in excess of $300 under the Criminal Justice Act, 18 U.S.C. § 3006A(e)(3) (specifically, a sum not to exceed $1,500 plus an allowance for expenses in the amount of $450), to employ Mr. Harrelson, an expert in the field of polygraphy to administer a polygraph examination to the defendant and to interpret the results. The motion pointed out that prior to the first trial the defendant sought authority to voluntarily submit to a polygraph examination but was denied such authority by the trial court and that this court in 492 F.2d 943, at 944 commented that "no prejudice to the government can flow from allowing the defendant the opportunity to at least attempt to lay a foundation for the admissibility of a polygraph test at trial." [3]

The trial court then ordered a hearing on the motion which was held on August 13, 1974. The record indicates that defense counsel advised the court that defendant at his own expense had undergone a polygraph examination by Virgil H. Hollis and that on the questions asked in that test, "there was an indication that the defendant was telling the truth to those questions." The court was further advised that the purpose for the additional authorization was to lay a foundation for the reliability of polygraph testing in general and also to have another polygraph test conducted. The record further discloses that Oliver, while represented by counsel, agreed that the results, even if unfavorable, could be offered in evidence by the government. Furthermore, Oliver agreed to submit himself to a polygraph examination and to answer any questions necessary to properly administer the test. Ironically, when the test was administered, it indicated deception on behalf of the defendant.

Appellant now contends that the agreement and waiver were secured from him in violation of his rights.[4] Specifically, Oliver asserts that the district court implicitly imposed as a condition to granting his motion the requirement that he agree the government could offer the results of the polygraph examination. According to Oliver, the trial court implied that it would not authorize the expenditure for Mr. Harrelson's services from government funds if he did not stipulate to the evidential use of the polygraph results. He further concludes that the ex parte hearing required by the Criminal Justice Act became an adversary proceeding and its allegedly coercive effect produced the waiver. Oliver claims to have been particularly susceptible to any coercion because of his indigency and willingness to submit to a polygraph test.

It is clear that a person can waive fundamental constitutional rights, including the right against self-incrimi-

---

**3.** The comment of this court at 492 F.2d 943, 944 n. 1 was as follows:

Defendant alleges additional error in the district court's refusal to allow him to submit voluntarily to a polygraph examination at his own expense. Defendant's counsel urges that he was denied the opportunity to lay the predicate for an attempt to convince the district court that the status of the art and science of polygraph examinations had progressed to the point where results of such examinations should be admitted into evidence. In view of our reversal on other grounds it is unnecessary to pass on the question presented. Presumably counsel can renew his motion on remand before the second trial. We simply note that no prejudice to the government can flow from allowing the defendant the opportunity to at least attempt to lay a foundation for the admissibility of a polygraph test at trial. Although this court has in the past held such tests inadmissible, we note recent court decisions have found under certain circumstances a polygraph examination may be admissible. (Citations omitted.)

**4.** Oliver seems to refer to his constitutional rights against self-incrimination, to the effective assistance of counsel, and to a fair trial, and to his statutory right to the receipt of funds under the Criminal Justice Act, 18 U.S.C. § 3006A(e)(1).

nation. *Hanson v. United States*, 186 F.2d 61, 65 (8th Cir. 1951). *See generally Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). However, an effective waiver of constitutional rights must be voluntary, knowing, and intelligent. *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The record of the court's hearing on August 13, 1974, is sufficient to satisfy the strict standard for a waiver.[5] Oliver assured the trial court that he had adequately discussed his decision with his lawyers. Defense counsel advised the court that Oliver wished to take the test, that he had the advice of counsel that he need not take the test, and that he had been advised that a requirement might be made that he agree that the results be used even if unfavorable. Most importantly, the record establishes a voluntary, knowing, and intelligent waiver on the part of the defendant. It should also be emphasized that a polygraph test cannot be administered without the full cooperation of the defendant. It is possible, therefore, that the mere taking of the examination is

---

5. *   *   *   *   *   *

The Court: Mr. Oliver, would you come up here to the Bench with your counsel?

Your counsel has asked that an expert, that you be permitted to incur the expense necessary to have a polygraph examination by Mr. Harrelson, whose name has been mentioned here and as set forth in the motion.

The first question is whether you are willing to agree that the results of the polygraph be subject to offer in evidence by the government if the results are unfavorable to you.

You are not required to make any such agreement.

The Defendant: Right from the very beginning, I have always wanted to take a polygraph.

The Court: What?

The Defendant: Right from the very beginning, I have always wanted to take a polygraph, and that holds true with this. I would like to take this one, too.

The Court: You didn't answer my question.

The Defendant: Regardless to the consequences, you know, whether it is, regardless of how the Court wants to use it, in other words.

The Court: I don't want to even use it at all. I am not going to even state whether it will be admitted in evidence. I would have to hear the evidence in connection with its admission.

What I am saying to you is that you are being asked now whether you are willing that the subject of the ruling of the Court on admissibility, that the government be permitted to use the results if they are unfavorable to you in an offer of evidence by the government.

The Defendant: Right. And I say, yes, I agree to that.

The Court: You understand that you have no, no one can require you to make this agreement, don't you?

The Defendant: Right, I understand that. Yes.

The Court: And is this an intelligent, understanding, and voluntary agreement that you are proposing to make?

The Defendant: Yes, Your Honor.

*   *   *   *   *   *

The Court: And you are willing to answer the questions propounded by the examiner and furnish him the information he seeks knowing that you cannot be required to do so?

The Defendant: Yes, Your Honor.

The Court: And knowing that if the results are unfavorable they may be used against you by the government?

The Defendant: Yes, Your Honor.

The Court: And it is possible, even though the results are favorable to you, that they will not be admitted in evidence. Do you understand that?

The Defendant: Yes, I understand that.

The Court: Did you take a polygraph examination in connection with the attempted rape charge?

The Defendant: Yes, Your Honor, I did.

The Court: What was the result?

The Defendant: The results were, the results were actually negative, Your Honor, but I knew that they would be. There was just one question involved which was a very incriminating question which I knew I was innocent of and that was really the sole reason for me taking that test. I knew that the test would come out against me. But there was just one question involved, that I knew I was innocent of, and that was the reason for taking that test.

The Court: But the results generally were unfavorable to you, is that right?

The Defendant: Yes, Your Honor. They were not favorable and it was used against me in court, which was understandable. I was out to prove one point in that particular case and that was that I did not abduct or have a weapon. That was the point that I wanted to prove.

The Court: Have you discussed this matter with your lawyers, Mr. Freeman and Mr. Bradshaw?

The Defendant: Yes, Your Honor.

*   *   *   *   *   *

tantamount to a waiver of constitutional rights if adequate warnings are given. *See Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Escobedo v. Illinois*, 378 U.S. 478, 490 n. 14, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).[6]

■■ We are satisfied that appellant voluntarily, knowingly and intelligently chose to waive his rights to object to the admission of the test results in evidence. It is obvious that Oliver calculated that he could pass the test even though he did not ultimately do so. His agreement as to the admissibility of the test, therefore, could be looked upon as a "deliberate bypass" of his constitutional rights based on an exercise of trial strategy. *Cf. Henry v. Mississippi*, 379 U.S. 443, 451–52, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). Appellant's assertion of involuntariness is raised for the first time on appeal. The only objection made by the defendant to the admission of Harrelson's opinion with respect to the results of the polygraph test was that Harrelson took the position of an advocate in his approach to the defendant during the pretest interview and that this tainted the reliability of the test. *See infra* Part III. We fail to find the trial court's action in providing for this test amounted to plain error.

## II.

■ This appeal necessarily raises the issue whether the state of the art of polygraph examinations has advanced to a level of reliability sufficient to make the tests admissible in evidence. Judicial opinions pertaining to the admission of polygraph testimony seem all to point toward exclusion. *See, e. g., Marks v.*

*United States*, 260 F.2d 377, 382 (10th Cir. 1958). Despite the almost uniform exclusion of such evidence, however, this court has recognized that "recent court decisions have found under certain circumstances a polygraph examination may be admissible." *United States v. Oliver*, 492 F.2d 943, 944 n. 1 (8th Cir. 1974). *But see United States v. Sockel*, 478 F.2d 1134, 1135–36 (8th Cir. 1973). Still other courts have recognized. a discretionary exclusionary rule. *See, e. g., United States v. Ridling*, 350 F.Supp. 90, 94 (E.D.Mich.1972). For example, *United States v. Wainwright*, 413 F.2d 796, 803 (10th Cir. 1969), *cert. denied*, 396 U.S. 1009, 90 S.Ct. 566, 24 L.Ed.2d 501 (1970), recognized that in a proper case polygraph evidence may be admissible. Given the unique circumstances of this case, we believe a discretionary rather than a per se exclusionary rule is appropriate.[7] In this regard, we emphasize that the defense and the prosecution had stipulated to the government's right to offer the polygraph results in evidence.[8] *Cf. Herman v. Eagle Star Insurance Company*, 396 F.2d 427 (9th Cir. 1968), *aff'g*, 283 F.Supp. 33 (C.D.Cal.1966).

■ It still must be determined whether the government has established an adequate foundation for the admissibility of stipulated or consented to polygraph evidence. We believe the necessary foundation can be constructed through testimony showing a sufficient degree of acceptance of the science of polygraphy by experienced practitioners in polygraphy and other related experts. *See Frye v. United States*, 54 App.D.C. 46, 293 F. 1013, 1014 (1923). *Cf. United States v. Wilson*, 361 F.Supp. 510, 511 (D.Md.1973). Given the special circum-

---

6. One court has recognized that a polygraph examination may not even involve the privilege against self-incrimination. *United States v. Ridling*, 350 F.Supp. 90, 97 (E.D.Mich.1972).

7. We reject appellant's contention that Mr. Harrelson's testimony should have been admitted, if at all, for impeachment rather than as substantive or corroborative evidence.

8. Various state courts have upheld the admissibility of polygraph test results when the parties have stipulated that the results of the test would be admissible in evidence. *See People v. Houser*, 85 Cal.App.2d 686, 193 P.2d 937 (1948); *State v. Galloway*, 167 N.W.2d 89 (Iowa 1969); *State v. Freeland*, 255 Iowa 1334, 125 N.W.2d 825 (1964); *State v. McNamara*, 252 Iowa 19, 104 N.W.2d 568 (1960); *State v. Fields*, 434 S.W.2d 507 (Mo.1968). *See generally* Annot. 53 A.L.R.3d 1006 (1972).

stances of this case, the government appears to have met this burden. Mr. Leonard Harrelson, a distinguished expert in the field of polygraphy, testified extensively concerning the evolution of the polygraph machine itself, the comprehensive training of polygraph examiners, licensing of the examiners, extensive research into the reliability of the polygraph technique, the increased accuracy of qualified experts, standard polygraph techniques and testing, improvement of polygraph schools, and testing of different categories of people.[9] As a result, the district court made a specific finding of the "advanced state of the science of polygraph examination."

This court is cognizant of the general hazards of admitting polygraph results in evidence. A jury may attach too much weight to the test because of its aura of scientific acceptability. Experts also recognize that the reliability of a polygraph test depends primarily on the expertise of the examiner and upon his technique.[10] It is significant that the trial court found Mr. Harrelson to be one of the most eminently qualified persons in his field. We cannot conclude that the stipulated or consented to polygraph is so unreliable as to be inadmissible in this particular case.[11] We deem it unnecessary to determine whether the polygraph has attained sufficient "general scientific acceptance" to justify the admission of polygraph results absent waiver or stipulation.

## III.

Appellant has further questioned the propriety of the testimony of Mr. Harrelson concerning the polygraph examination he administered to Oliver. Defense counsel initially requested that Mr. Virgil Hollis, another polygraph expert, conduct a polygraph examination of the defendant. Although Oliver passed this examination, the defense apparently considered it necessary to obtain a polygraph expert with more impressive qualifications than those of Mr. Hollis.[12] Consequently, defense counsel contacted Mr. Harrelson and requested his participation in the case.[13] Mr. Harrelson then administered a polygraph examination, but it indicated substantial deception on behalf of the defendant. Oliver primarily asserts that Mr. Harrelson utilized improper procedures during both the pretest interview and the examination. It is claimed that Mr. Harrelson became an accuser and exhibited bias that aroused anger and hostility in the defendant which undermined the validity of the polygraph results. Oliver also contends Mr. Harrelson formed a premature opinion that the defendant was a psychopath.

Admission or exclusion of expert testimony is a matter within the sound judicial discretion of the trial judge, and it is only when the reviewing court determines that his decision is "manifestly erroneous" that it may be found that the trial judge has abused his discretion and that reversal is required.

---

**9.** Mr. Harrelson personally testified that he had conducted more than 50,000 examinations which were subjected to verification through supporting admissions, confessions, or additional evidence. The accuracy of his diagnosis was estimated in excess of 90 percent.

**10.** *J. Reid & F. Inbau, Truth and Deception,* 4 (1966).

**11.** The standard of relevancy, "tendency to make the existence" of the fact to be proved "more probable or less probable than it would be without the evidence," is fully met. *Fed.R. Evid.* 401.

**12.** Mr. Hollis has not undergone any significant continuing education in polygraphy; his primary training was acquired in the military; his primary work was involved with corporate security work; and he was not recognized as an authority in his field. The trial court characterized him as a part-time polygraph operator.

**13.** Mr. Harrelson's qualifications are excellent. He has served as president of the Keeler Polygraph Institute, which teaches polygraphy. Moreover he has conducted various training schools, performed polygraph examinations on a regular basis, and undergone continuous study in the field of polygraphy.

*Stancill v. McKenzie Tank Lines, Inc.,* 497 F.2d 529, 535 (5th Cir. 1974). After a thorough examination of the record, we do not believe the district court's decision to admit the testimony of Mr. Harrelson was manifestly erroneous. Oliver's testimony at the pretrial hearing is adamant that Mr. Harrelson's technique and questions were insulting and accusatory. His testimony becomes less persuasive, however, in light of the contrary testimony given by Mr. Harrelson himself and corroboration provided by Mr. Herbert Briick, an F.B.I. agent who was present at the pretest examination. Defense counsel Bradshaw was also present during the pretest interview. Neither were present during the administration of the polygraph examination. Mr. Briick, who is experienced in the art of polygraphy, in the pretrial hearing corroborated the opinion of Mr. Harrelson that he had utilized proper procedures in the administration of the pretest interview to Oliver and agreed with Harrelson's evaluation of the results of the polygraph examination as shown by the charts and test questions. The record fails to sustain the claim of bias on the part of Mr. Harrelson. Furthermore, it should be emphasized that the qualifications and expertise of Mr. Harrelson are of the highest order. In fact, he was initially selected by the defendant.

## IV.

Defendant also asserts that the trial court abused its discretion in excluding the testimony of Mr. Hollis. His testimony took on increased importance to the defense following Oliver's failure of the polygraph examination given by Mr. Harrelson. The district court, however, rejected any testimony by Mr. Hollis for two fundamental reasons. First, he did not appear to have the requisite qualifications of a polygraph expert. Second, his test was found unreliable because of his lack of expertise and the limitations placed upon his administration of the examination by the defense.

The record discloses that the qualifications of Mr. Hollis are minimal, especially when compared to those of Mr. Harrelson. Expert testimony concerning polygraph results demands more than minimal qualifications. *See United States v. Ridling,* 350 F.Supp. 90, 96 (E.D.Mich.1972). We find it even more significant that defense counsel informed Mr. Hollis prior to his administration of the test that he should not examine the defendant about anything on the alleged rape. It was indicated that the defendant was afraid he would "blow the hot question," referring to rape. The limitation imposed by the defense seriously undermined the reliability of the test conducted by Mr. Hollis. Under the circumstances we fail to find the exclusion of his testimony to be an abuse of the trial court's discretion. *See Stancill v. McKenzie Tank Lines, supra,* 497 F.2d at 535.

## V.

This appeal further requires a determination whether the district court erred in permitting Mr. Harrelson to testify that he was not permitted to attempt to secure a confession from the defendant. Interestingly, this limitation was originally imposed by the defense counsel. The trial court allowed Mr. Harrelson to testify as to the limitation without indicating by whom it was imposed. He had previously testified that the high reliability of his results (about 99%) was measured by the confessions he had been able to obtain. Preventing Mr. Harrelson from testifying as to the existence of the limitation, therefore, could have minimized the accuracy of his polygraph results in the minds of the jury. It is untenable that the limitation constituted an implication by Mr. Harrelson that the defendant was guilty. Mr. Harrelson testified only as to specific polygraph questions and explained whether he found any deception. He did not render an opinion as to the defendant's guilt or innocence. Error, if any, was not prejudicial.

## VI.

Appellant raises still other evidential issues for this court to consider. Oliver asserts that the evidence adduced at trial was insufficient to support a conviction. Specifically, it is contended that the actions of the victim were consensual and that there is no evidence of actual physical force. We cannot agree. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). There is substantial evidence to support the jury's verdict in this case. The prosecutrix testified that she was forcibly placed in the defendant's automobile by him, was transported to the scene of the attack against her will, and that she was there sexually assaulted. Furthermore, it is not required that the involuntary interstate transportation of a kidnap victim be corroborated by direct or circumstantial evidence. *See Smith v. United States,* 407 F.2d 356, 358 (8th Cir.), *cert. denied,* 395 U.S. 966, 89 S.Ct. 2113, 23 L.Ed.2d 753 (1969).

## VII.

It is also contended that the trial court erred in admitting evidence of two similar acts by the defendant. Specifically, prosecution witness Marna Stauberger testified that Oliver threatened her and made sexual advances with a knife in June 1971 while she was alone in a park. Furthermore, government witness Denise Hogard testified that the defendant on August 31, 1971, ordered her into his car and sexually assaulted her. The court excluded testimony tendered by the government as to two other individuals with respect to similar acts of the defendant which were remote in time.

The general rule is that evidence of other crimes by the accused, not charged in the indictment and not part of the same transaction or occurrence charged, is inadmissible. *United States v. Clemons,* 503 F.2d 486, 489 (8th Cir.

1974). When there is a genuine issue as to identity, motive, intent, preconceived plan, entrapment, or absence of mistake or accident, evidence of other crimes may be admissible. *See, e. g., Umbaugh v. Hutto,* 486 F.2d 904, 906 (8th Cir. 1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1978, 40 L.Ed.2d 311 (1974); *United States v. Lewis,* 423 F.2d 457, 459 (8th Cir.), *cert. denied,* 400 U.S. 905, 91 S.Ct. 146, 27 L.Ed.2d 142 (1970). It must first be shown, however, that (1) an issue on which other crime evidence may be reviewed is raised; (2) that the proffered evidence is relevant to that issue; (3) that the evidence is clear and convincing; and (4) that the probative worth outweighs the probable prejudicial impact. *United States v. Clemons, supra,* 503 F.2d at 489.

We find that the requisite foundation has been established in the instant case. Evidence of other crimes may be submitted on the issue of intent. *Clemons, supra,* 503 F.2d at 489. Knowledge and intent were properly in issue in the instant case. *See Hattaway v. United States,* 399 F.2d 431, 433 (5th Cir. 1968). The government was required to show specific intent on the part of the defendant. *See* 18 U.S.C. § 1201. Moreover, the defense suggested, through cross-examination, lack of intent or guilty knowledge. *See United States v. Brown,* 453 F.2d 101, 108 (8th Cir.), *cert. denied,* 405 U.S. 978, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1971).

The proffered evidence was relevant. *See Fed.R.Evid.* 401. In addition, we find the proof that Oliver committed similar offenses sufficiently complete to meet the requirement that it be clear and convincing. *Cf. Neff v. United States,* 105 F.2d 688, 691–92 (8th Cir. 1939). The probative worth also appears to outweigh the probable prejudicial impact. In this regard, it should be emphasized that the two similar incidents were similar in kind and reasonably close in time to the charge involved in this case. The maximum time lapse was only 16½ months. *See Umbaugh v. Hutto,* 486 F.2d 904, 907 (8th Cir. 1973), *cert.*

*denied,* 416 U.S. 960, 94 S.Ct. 1978, 40 L.Ed.2d 311 (1974). Notably, the evidence of other criminal activity does not have to be that of an identical offense. *United States v. Belle,* 516 F.2d 578, 581 (8th Cir. 1975). It is sufficient that "[the] evidence is of a similar involvement reasonably related to the offending conduct and is presented in a manner in which its prejudice does not outweigh its probative value." *Id.* After considering these rules governing the admissibility of similar acts, we fail to find that the trial court committed an abuse of discretion in admitting the disputed testimony.

## VIII.

■ Finally, the appellant charges that alleged character traits of the prosecutrix were improperly excluded from evidence. The trial court initially sustained objections to questions by defense counsel addressed to various defense witnesses who were former roommates of the victim concerning her character traits and reputation for chastity and morality.[14] The defense sought to elicit from Crystal Closterman whether the prosecutrix had told about any similar occurrences involving rape. Sheryl Huddleston was similarly questioned. Defense counsel also questioned Deborah Ness about the activities of the prosecutrix on the evening following the alleged rape. In general, the defense was attempting to show that the victim had a bad reputation for chastity and morality. The trial court directed defense counsel to discontinue this line of questions until the matter could be considered in chambers. In the meantime the witnesses were retained on call. The appellant now contends that extrinsic evidence of the character and traits of character of the prosecutrix should have been received since she was the victim of the alleged offense.

The difficulty is that after hearing counsel in chambers and permitting the defense to make an appropriate offer of proof the latter failed to do so. Ms. Huddleston was called to the stand for this purpose and when she indicated she did not know what chastity and promiscuity meant she was excused and defendant's counsel indicated the defense rested. It was proper for the court to require defendant to make his offer of proof by questioning the witnesses and receiving their responses before ruling thereon. The claimed error is without merit.

Affirmed.

HEANEY, Circuit Judge (dissenting).

I respectfully dissent.

In my view, the colloquy set forth in footnote 5 of the majority opinion demonstrates rather clearly that the trial court conditioned the granting of the defendant's motion for a polygraph examination on the requirement that the defendant agree that the government could offer the results of the examination in evidence if the results were unfavorable to the defendant. This was an inappropriate condition to impose, particularly in the light of the comments of this Court set forth in footnote 3 of the majority opinion. The trial court could have made its position clear by stating that the polygraph examination would have been made available even if the defendant did not consent in advance to the results of that examination being used against him if the results were unfavorable.

I do not find myself in disagreement with the views expressed by my colleagues on the other issues in this case.

14. The court permitted the former roommates to testify about the victim's general reputation for truth and veracity.