**UNITED STATES of America**

v.

**Leroy G. BUHL.**

**Crim. A. No. 88–490.**

United States District Court, E.D. Pennsylvania.

Jan. 24, 1989.

Lee J. Dobkin, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Jeffrey Staniels, Defenders Ass'n, Philadelphia, Pa., for defendant.

MEMORANDUM AND ORDER

HUYETT, District Judge.

Defendant Leroy G. Buhl is charged in a one count indictment with kidnapping in violation of 18 U.S.C. § 1201(a)(1) (1982 & West Supp.1988), arising from the abduction of Nancy Kwicinski on August 5, 1988. The government moves pursuant to Federal Rule of Evidence 404(b) to admit the evidence that on September 23, 1989, defendant abducted Michelle Marie Nickis a/k/a Michelle Marie Buhl ("Michelle Buhl"), defendant's nineteen year old niece.[1] The government contends that the evidence concerning the abduction of Michelle Buhl bears significant factual similarities which renders the evidence relevant and probative of the specific intent[2] of defendant to abduct Kwicinski.

In consideration of the facts developed during a hearing on the alleged abduction of Michelle Buhl in which Ms. Buhl gave testimony about the facts and circumstances of her abduction, a review of the facts of the abduction of Kwicinski as contained in the government's brief, and oral argument on the motion, I conclude that the evidence concerning Michelle Buhl's abduction is highly relevant to demonstrate the intent of defendant if the defendant raises the consent of Kwicinski when she is cross-examined during trial. I further conclude that although the evidence is prejudicial to defendant, the highly probative nature of the evidence is sufficient to outweigh the resulting prejudice. I therefore hold that evidence of Michelle Buhl's abduction is admissible under Federal Rule of Evidence 404(b) if intent of defendant is raised as a defense during trial.

## I.

Briefly summarized according to the government's brief, during the evening of August 5, 1988, Buhl abducted Kwicinski from a location in Long Branch, New Jersey to a wooded location in Schuykill County, Pennsylvania. During the abduction, Buhl allegedly operated the gas pedal of Kwicinski's car from the passenger seat while forcing Kwicinski at knife point to drive the vehicle to Schuykill County. During the course of the trip, Buhl choked and beat Kwicinski and repeatedly sexually assaulted her. During the sexual attacks, Buhl called Kwicinski a "slut", insisted that she "liked [the forced sex]", and blamed her for his sexual performance problems. After they arrived in Schuykill County, Buhl sexually assaulted Kwicinski again. After the assaults apparently ended, Buhl became contrite, apologized, and attempted to engage Kwicinski in casual conversation. Kwicinski later escaped to police and identified Buhl as her assailant. Buhl eluded police attempts to apprehend him.

According to the government's brief and the testimony of Michelle Buhl at the hearing, on September 23, 1988 while a fugitive from the Kwicinski abduction, Buhl abducted Michelle Buhl from a location in Old Bridge, New Jersey. Allegedly, Buhl forced his way into Michelle's car after he arranged to meet her at a parking lot. Buhl then choked her and beat her. Buhl forced Michelle to drive the vehicle while he operated the gas pedal from the passenger seat. Buhl forced Michelle from the car into the back of a pick-up truck somewhere in New Jersey.[3] While in the back

---

**1.** The incident surrounding the abduction of Michelle Buhl is the subject of another pending indictment, Criminal No. 88–491. Trial of that indictment is scheduled before another judge of this Court in February, 1989.

**2.** The government initially contended that evidence concerning the abduction of Michelle Buhl was also relevant to identifying the defendant or to demonstrate the absence of mistake. During argument on the instant motion, counsel for defendant stated that these issues would not

be raised at trial. Consideration of these issues is therefore unnecessary.

**3.** The pick-up truck was driven by a Bobby Morgan, Michelle's cousin. Morgan apparently was unaware of what was occuring in the car which was following the truck. Once the two vehicles stopped on a secluded highway in New Jersey, Buhl allegedly forced Morgan to continue driving the truck to Schuykill County by threatening him with an automatic weapon which Buhl fired once at Morgan.

of the truck, Buhl sexually assaulted Michelle Buhl at gun point.[4]

They eventually arrived at location within a mile of where Buhl brought Kwicinski in Schuykill County, Pennsylvania. Michelle later identified the location as her grandmother's home in Mount Pleasant, Pennsylvania. Buhl sexually assaulted Michelle again. During the course of the assaults, Buhl called Michelle a "slut" who "liked [forced sex]", and blamed her for his sexual performance problems. After the assaults concluded, Buhl became apologetic and told Michelle he could not believe what he had done. Buhl left the area telling Michelle that if she was not there when he returned, he would kill her. Michelle then left the area, and made her way to the police. Buhl was apprehended on September 24, 1988 with the assistance of Michelle Buhl.

## II.

Rule 404(b) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of ... intent, ... [or] knowledge...." In this circuit,

> [i]n order to admit evidence under Rule 404(b), a court must be able to articulate a way in which the tendered evidence logically tends to establish or refute a material fact in issue, and that chain of logic must include no link involving an inference that a bad person is disposed to do bad acts. Once the chain of logic has been articulated, its probative strength must be weighed under Rule 403 against any potential for unfair prejudice.

*United States v. Echeverri*, 854 F.2d 638, 644 (3rd Cir.1988). Rule 404(b) is "intended to emphasize admissibility of other crime evidence." *United States v. Long*, 574 F.2d 761, 766 (3rd Cir.), *cert. denied*, 439

U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978).

### A.

To obtain a conviction under the indictment, the government must prove beyond a reasonable doubt that Buhl knowingly and willfully abducted Kwicinski and transported her across state lines. 18 U.S.C. § 1201(a)(1). Thus, the government must prove that Buhl had the specific intent to perform that crime. *United States v. Link*, 728 F.2d 1170, 1171 (8th Cir.1984); *United States v. Oliver*, 525 F.2d 731, 739 (8th Cir.1975), *cert. denied*, 424 U.S. 973, 96 S.Ct. 1477, 47 L.Ed.2d 743 (1976); *cf. United States v. Crosby*, 713 F.2d 1066, 1070 (5th Cir.1983). Extrinsic evidence of other factually similar kidnaps which occurred prior to the charged offense are admissible to show intent of the defendant to commit kidnapping, once the defendant raises consent of the victim through cross-examination. *Link*, 728 F.2d at 1172; *United States v. Winters*, 729 F.2d 602, 604 (9th Cir.1984); *Oliver*, 525 F.2d at 739–40.

In this case, the factual similarities are clear. Buhl allegedly transported both women from New Jersey to approximately the same location in Schuykill County. Both women were forced to drive a car while Buhl allegedly controlled the gas pedal. Both women were choked and beaten during the course of the abduction. Both women were sexually assaulted in the same fashion. Buhl allegedly called both women "sluts" who enjoyed forced sex during the attacks. After both attacks, Buhl allegedly became apologetic. If the defense attempts to demonstrate that Kwicinski voluntarily went with Buhl and consented to sex with him, the strikingly similar account of abduction of Michelle Buhl becomes relevant and is sufficiently similar that a jury may conclude Kwicinski did not consent.[5] *Link*, 728 F.2d 1172.

---

**4.** At some point during the abduction, Michelle came into possession of a knife allegedly from Buhl.

**5.** Defendant contends that the consent of the victim is irrelevant to show defendant's intent because the consent of the victim involves the

state of mind of the victim, not the defendant. This argument is without merit. If evidence shows the victim does not consent, that evidence is highly relevant to show that the defendant had the specific intent to commit the crime of kidnapping.

■ Contrary to the defendant's contention, there is no requirement that the incidents be precisely the same for the second incident to be admissible to show intent, as there may be if the government was offering the extrinsic evidence to show a "signature" crime. *See United States v. Beechum,* 582 F.2d 898 (5th Cir.1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). "Similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States,* 485 U.S. 681, ——, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988, *citing Beechum,* 582 F.2d at 912–13. Under this standard, I conclude that the similarities of the two incidents could support a jury finding by a preponderance of the evidence that the abduction of Michelle Buhl occurred and that the defendant committed that abduction. *See id.* The evidence is, therefore, relevant if the consent of Kwicinski is raised as an issue during trial.

Relying on *Echeverri* and *Boyd,* defendant also claims that Third Circuit precedent on the issue holds that evidence of subsequent acts is never admissible to show intent of a prior crime. First, I note that the extrinsic evidence erroneously admitted in those cases was evidence of other acts to show a conspiracy existed after the charged conspiracy concluded. *Echeverri,* 854 F.2d at 645; *U.S. v. Boyd,* 595 F.2d 120, 125–26 (3rd Cir.1978). While the two incidents at issue here are charged in separate indictments, the second incident occurred while Buhl was evading apprehension for the first kidnapping. The incidents also occurred only five weeks apart, and are not "temporally remote." Second, in both cases, the admissibility of subsequent wrongful acts in other circumstances was specifically noted. *Echeverri,* 854 F.2d at 645; *Boyd,* 595 F.2d at 127 (Hunter, J., concurring). Third, evidence of subsequent acts has been found admissible in other contexts to show the defendant's state of mind during a prior offense. *United States v. Hearst,* 563 F.2d 1331, 1336–37 (9th Cir.1977), *cert. denied,* 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978). Given the clear precedent from other circuits about the relevance of other similar *prior* kidnap and sexual assault incidents to show defendant's intent to commit the charged offense, I conclude that the factual similarities, and the brief period of time between the two incidents renders the evidence of the *subsequent* act relevant to the intent of the defendant at the time of the Kwicinski incident.

### B.

■ Admittedly, the evidence of the Michelle Buhl abduction and sexual assault will be very prejudicial to defendant. However, weighed against its probative value, I cannot conclude the resulting prejudice is undue. The test is articulated *United States v. Beechum,* 582 F.2d 898 (5th Cir. 1978).

Probity in this context is not an absolute; its value must be determined with regard to the extent which the defendant's intent is established by other evidence, stipulation or inference. It is the incremental probity of the evidence that is to be balanced against its potential for undue prejudice. Thus, if the Government has a strong case on the intent issue, the extrinsic evidence may add little and consequently will be excluded more readily.... In measuring the probative value of the evidence, the judge should consider the overall similarity of the extrinsic and charged offenses. If they are dissimilar except for the common element of intent, the extrinsic offense may have little probative value to counterbalance the inherent prejudice of this type of evidence. Of course, equivalence of the elements charged and extrinsic offenses is not required. But the probative value of the extrinsic offense correlates positively with its likeness to the offense charged. Whether the offense is sufficiently similar in its physical elements so that its probative value is not substantially out-weighed by its undue prejudice is a matter within the sound discretion of the trial judge. The judge should also consider how much time separates the extrinsic and charged offenses: temporal

remoteness depreciates the probity of the extrinsic offense.

This position has been adopted by a number of courts. *See* 2 Weinstein's Evidence ¶ 404[18] at nn. 9, 10. Although the standard is somewhat heightened for measuring the prejudicial value of sexual offense, *see id.* at 404–150, evidence of sexual assaults after a kidnapping is admissible to negate the claim of consent. *United States v. Bradshaw*, 690 F.2d 704, 708–09 (9th Cir.1982) *cert. denied*, 463 U.S. 1210, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983).

As stated previously, the factual similarities between the two events are strong. The intent required to commit both acts is precisely the same. The acts are not temporally remote. I, therefore, conclude that the overall similarity of the extrinsic evidence and the charged offense is sufficiently probative to counterbalance the prejudice from its admission once the consent of Kwicinski is raised.

### III.

Lastly, defendant claims that because of the Supreme Court's recent decision in *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the jury will become confused concerning the standard for guilt in this case. *Huddleston* held a district court need only conclude that a jury may find by a preponderance of the evidence that a similar act occurred and was committed by the defendant on trial before ruling on its admissibility at trial. *Id.* at ——, 108 S.Ct. at 1501–02. Because a defendant must be found guilty of the charged offense beyond a reasonable doubt, and a jury need only find that a similar act occurred and was committed by the defendant to a preponderance of the evidence, the potential does exist for a jury to blur the standards during its deliberations. The Supreme Court concluded, however, that a limiting instruction would be sufficient to cure any potential confusion which results. *Id.* Thus, defendant's argument is without merit.

An appropriate order follows.

### ORDER

For the reasons stated on the record at the hearing on January 23, 1989, and stated in the attached memorandum,

The Government's Motion to Admit Certain Evidence under Rule 404(b) is GRANTED contingent upon the raising by defendant of defendant's specific intent to abduct Nancy Kwicinski as an issue during trial. The parties shall submit proposed limiting instructions not later than 4 P.M., January 25, 1989.

IT IS SO ORDERED.